THE STATE OF OHIO, APPELLANT, *v.* MYERS, APPELLEE.

[Cite as State v. Myers (1971), 26 Ohio St. 2d 190.]

(No. 70-352—Decided June 23, 1971.)

*Mr. Michael R. McKinley,* director of law, *Mr. O. Joseph Murray,* prosecuting attorney, and *Mr. Jacob M. Fridline,* for appellant.

*Messrs. Lutz & Oxley, Mr. Howard S. Lutz* and *Mr. Kenneth J. Nordstrom,* for appellee.

DUNCAN, J. This appeal calls upon us to decide, first, whether, under R. C. 4511.19(B), the failure to advise a person tested for determination of the concentration of alcohol in the blood that he "may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a police officer * * *" requires exclusion from evidence of the police-administered test results. Other courts have answered affirmatively. See *Couch* v. *Rice* (1970), 23 Ohio App. 2d 160; *Bores* v. *Rice* (1969), 17 Ohio Misc. 163.

It should be noted that here we are not confronted by any question of constitutional magnitude which might place this issue within the purview of the exclusionary rule first enunciated by the United States Supreme Court. See *Mapp* v. *Ohio* (1961), 367 U. S. 643, and, generally, *State* v. *Cowans* (1967), 10 Ohio St. 2d 96.

The United States Supreme Court has held that where a defendant refused to consent to a taking of his blood sample for chemical analysis, a blood sample taken over his objection and without his consent was admissible in evidence. In so holding, the court denied the contention that such procedure violated the Fourth, Fifth, Sixth, or the Fourteenth Amendments to the United States Constitution. *Schmerber* v. *California* (1966), 384 U. S. 757. See, also, *Breithaupt* v. *Abram* (1957), 352 U. S. 432.

Rather than being faced with a constitutional problem in the case at bar, we are confronted with a statutory requirement that the person "*shall* be so advised," with no *express* sanction provided for the failure of the police officer to do so. With that in mind, we must look to the statutory rule in this state that the reversal of a lower court's conviction on the basis of "the admission or rejection of any evidence offered against or for the accused" shall not be had "unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby." R. C. 2945.83. Accordingly, in the absence of a showing of prejudice having accrued to a defendant by

the failure to advise him of his right to have an independent test made, as provided in R. C. 4511.19(B), the results of a chemical test so administered may not be excluded from evidence. The record before us discloses no prejudice accruing to appellee from the admission of evidence regarding the chemical test performed; nor does it disclose evidence sufficient to support a finding as a matter of law that this test was improperly administered or its results erroneous.

In reaching this result, we are aware that there is no effective leverage available to a defendant which may be employed to compel police officials to advise a suspect as required by R. C. 4511.19(B). This was, and is, a matter for the General Assembly. In our view, there is no judicial machinery available to produce the missing sanction. Moreover, whether or not the presence of an attorney representing defendant at the police station waives or makes unnecessary the advice the statute requires to be given a suspect is mooted by our conclusion that the test results were otherwise admissible.

In dealing with appellant's claim that the state's argument and the trial court's charge was free of error, we must look to the nature of legal presumptions in general, and, specifically, the presumption embodied in R. C. 4511.-19(B). Generally, ''a presumption is a procedural device which is resorted to only in the absence of evidence by the party in whose favor a presumption would otherwise operate; and where a litigant introduces evidence tending to prove a fact, either directly or by inference, which for procedural purposes would be presumed in the absence of such evidence, the presumption never arises and the case must be submitted to the jury without any reference to the presumption in either a special instruction or a general charge.'' *Ayers* v. *Woodard* (1957), 166 Ohio St. 138, paragraph three of the syllabus. See, also, *In re Breece* (1962), 173 Ohio St. 542, 554; *Shepherd* v. *Midland Mutual Ins. Co.* (1949), 152 Ohio St. 6.

Although the decision in *Ayers* v. *Woodard, supra,*

generally has been a settling influence in the hectic problems presented to the courts by presumptions, knotty problems remain. The opinion states, at page 144:

"* * * Conversely, when *either* party introduces substantial credible evidence tending to prove a fact which would otherwise be presumed, the presumption either never arises or it disappears. * * *" (Emphasis added.)

In *Ayers,* the court decided that when plaintiff introduced substantial credible evidence from which the jury could infer agency, an issue in the case, the common-law presumption of agency was removed from the case and became a forbidden subject for a part of the court's charge.

In order to decide whether the presumption problem in the instant case comes within the rule of law announced in paragraph three of the *Ayers* syllabus, we examine the nature of the presumption established by R. C. 4511.19 and the fact posture of the case at bar.

Specifically, R. C. 4511.19(B) reads: "If there was at that time a concentration of fifteen hundredths of one per cent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of alcohol. * * *"

In so providing, the General Assembly has expressed its conviction that the relationship between the objective determination by chemical test of the percentage of alcohol by weight in the blood (.15% or more), and its effect on people, is so well scientifically established that it need not·be demonstrated by evidence, and may take the place of evidence at trial. The purpose of the presumption is to eliminate the need for expert testimony which would otherwise be necessary to relate the numerical figure representing a percentage of alcohol by weight in the blood as shown by the result of a chemical test, with the common understanding of being under the influence of alcohol. See *Lister* v. *England* (D. C. C. A. 1963), 195 A. 2d 260; *State* v. *Protokowicz* (1959), 55 N. J. Sup. 598, 151 A. 2d 396; *Vore* v. *State* (1954), 158 Neb. 222, 63 N. W. 2d 141. When the test results are in evidence, the evidence that the presumption supplies is the correlation between a scientific fact,

the results of the test, and human behavior; that is, that all persons who test .15% or more are under the influence of alcohol.

The arresting officer and other police officers gave testimony descriptive of how appellee appeared to them; evidence which is commonly termed "physical signs" of the influence of alcohol. They also stated that in their oppinions the appellee was under the influence of alcohol.

Citing the cases *Ayers* v. *Woodard, supra,* and *Toledo* v. *Gfell* (1958), 107 Ohio App. 93, appellee argues that when the prosecutor introduces this other evidence of defendant's condition resulting from the consumption of an alcoholic beverage (other than the test results), the court cannot charge on the statutory presumption. Although this proposition was decided against the appellee in the Court of Appeals, and no cross-appeal was perfected, we are aware of the concern members of the bar and bench have for this question, and thus we are constrained to deal with it.

The prosecutor, presumably relying on the presumption, *did not* introduce any expert testimony to prove the correlation between the numerical test result and human behavior. Actually, viewing the problem somewhat narrowly, it could be argued that, since the state has not produced such expert testimony, the presumption still exists. Such a narrow distinction from the *Ayers* rule, however, is not realistic.

In addition to supplanting such expert testimony, the statutory presumption also bears directly on an issue material to the case, *i. e.,* whether defendant was under the influence of alcohol. In this case, as in many others, this was the only contested issue for determination.

The impact the presumption provides, given its real intendment, is that it tends to prove whether defendant was under the influence of alcohol. Pragmatically, a fine distinction based on the fact that the presumption is abstract or impersonal as to a particular defendant generally will not be made by jurors.

The state introduced other nonscientific testimony to

show Myers to have been under the influence of alcohol. Therefore, unless the presumptive device employed here (R. C. 4511.19[B]) can be otherwise distinguished from that employed in *Ayers* (a common-law presumption "that the acts of duly commissioned deputy sheriffs are performed in their capacity as such"), a court may not instruct a jury with respect to it. There is a basis for such distinction. We believe that the General Assembly, in enacting R. C. 4511.19(B), fully intended that the trier of the facts be instructed regarding the presumption contained therein when properly administered test results are available. R. C. 4511.191, the implied consent statute, evidences a bold legislative effort to procure a chemical test of body fluid or breath from those suspected of operating a motor vehicle while under the influence of alcohol. Hopefully, the fact that the law requires suspects to be tested will have the effect of detering those under the influence from driving; a loss of the driving privilege being a sanction for an unlawful refusal to be tested. Furthermore, the General Assembly has provided a means of producing scientifically reliable evidence bearing on the innocence or guilt, without which the trial of those alleged to have been driving under the influence of alcohol often tends to be turned on emotional rather than factual considerations.

If we were to hold that this statutory presumption is to be rendered nonproductive by a police officer testifying that in his opinion defendant was under the influence of alcohol, or the admission of other evidence descriptive of a defendant's appearance or behavior, we would be acting contra to the intended thrust of the statute. We thus believe this statutory presumption to be significantly different from the common-law presumption considered in *Ayers* v. *Woodard, supra.*

However, before the statutory presumption may be employed by the fact finders, they must be satisfied by the requisite degree of proof that at the time of testing "there was * * * a concentration of fifteen hundredths of one per cent or more by weight of alcohol in defendant's blood."

To make this determination the jury must weigh the evidence of the testing procedure and the nature of the test itself. Hypothetically, if the jury finds the testing procedure amiss to the extent that the test results are unreliable, it cannot employ the presumption. Conversely, if the jury finds the test proper and believes that the defendant's blood contained the concentration of alcohol demanded by the statute, *one* element of the prosecution's case is presumed to be present; *i. e.*, that the defendant was under the influence of alcohol. Since the presumption is rebuttable, defendant may then go forward with his evidence on that element. Defendant cannot be heard to complain that the provisions of R. C. 4511.19 eliminate his presumption of innocence or hamper the presentation of his defense.

A defendant may present evidence that a chemical test result does not necessarily prove that *he* was under the influence of alcohol, though his test result was above .15%. Indeed, here, appellee did attempt to do precisely that.

As stated above, this presumption, as well as other statutory presumptions not specifically designated to be conclusive, may be rebutted by other evidence. *State, ex rel. Olsen, v. Indus. Comm.* (1967), 9 Ohio St. 2d 47, 50; *State, ex rel. Pivk, v. Indus. Comm.* (1935), 130 Ohio St. 208, 212. A jury *must* be charged in this regard.

The degree of proof necessary to rebut a presumption is the subject of paragraph five of the syllabus of *Kennedy v. Walcutt* (1928), 118 Ohio St. 442, which is as follows:

"The degree of proof necessary to remove a presumption is not to be confused with the degree necessary to sustain the burden of proof. When a party is not required to sustain the burden of proof upon some particular issue, a rebuttable presumption arising out of such issue may be overcome by evidence which counterbalances the evidence to sustain the presumption; however, when such party is required to assume the burden of proof upon an issue, any rebuttable presumption arising therefrom must be remov-

202

ed by the same degree of proof necessary to sustain the issue.''

In this case, the prosecutor's argument, as set forth above, reinforced by the trial court's assurance that it was not a misstatement, resulted in error. Arguments to the jury that the presumption provided in R. C. 4511.19(B) was the law that the jurors were required by oath to apply, without explanation by the court as to the presumption's rebuttable nature, were highly prejudicial to appellee. Moreover, the statements may have led the jury to believe that the defendant who tested .15% is presumed by law to be under the influence of alcohol, without consideration of the requirement that a jury must first find by the proper quantum of evidence that the test procedure was proper and proved the defendant's blood alcohol concentration.

The statement in the general charge that a presumption ''may be controverted by other evidence, direct or circumstantial,'' is an insufficient instruction with respect to the rebuttability of the presumption.

Appellee urges also that this appeal should be dismissed for the reason that an appeal to this court cannot be prosecuted by a city law director without the consent of the prosecuting attorney.

R. C. 2953.14 provides:

''Whenever a court superior to the trial court renders a judgment adverse to the state in a criminal case or proceeding, the state, through either the prosecuting attorney or the attorney general, *may* institute an appeal * * *.'' (Emphasis added.)

Appellee's contention is that the language of this statute is exclusory, rendering a municipal law director powerless to seek such an appeal. We do not agree.

R. C. 1901.34 directs ''the city solicitor, city attorney, or director of law for each municipal corporation'' to ''prosecute all criminal cases brought before the Municipal Court for * * * violation of state statutes * * * occurring within the municipal corporation * * *.'' This statute provides further that a municipal legal officer ''shall per-

form the same duties * * * as are required of the prosecuting attorney of the county.'' We cannot believe that the General Assembly meant to vest this power in such an officer, only to render him impotent to prosecute an appeal.

The instant case began in the Ashland Municipal Court, and was prosecuted by the law director of that city. We hold that under these circumstances, he was a proper person to carry forth the state's appeal to this court after a reversal by the Court of Appeals.

Appellee also attempts to raise other issues in this court, but has failed to appeal from the judgment of the Court of Appeals. Therefore, we need not review those issues.

Accordingly, for reasons specified, the judgment of the Court of Appeals, reversing the judgment of the Municipal Court and remanding the same for a new trial, is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and LEACH, JJ., concur.

SCHNEIDER, J., concurs in paragraphs two through seven of the syllabus but dissents from paragraph one and the judgment. Philosophically, I am opposed to the exclusionary rule. However, in this type of case, the accused has the statutory right to consult a private physician, where services may be essential to his defense. He should be informed of that right; and the prosecution should bear the risk of failure of that information.