THE STATE OF OHIO, APPELLEE, *v.* ADAMS, APPELLANT.

(No. 81AP-911—Decided August 12, 1982.)

*Mr. Michael Miller,* prosecuting attorney, *Mr. Alan C. Travis* and *Ms. Karen L. Martin,* for appellee.

*Mr. James Kura,* county public defender, and *Ms. Gloria Eyerly,* for appellant.

STRAUSBAUGH, J. This is an appeal by defendant from a conviction in the Franklin County Court of Common Pleas for the offense of passing bad checks, under R.C. 2913.11.

The record indicates that at the beginning of the trial the parties stipulated that state's exhibit 1, check No. 278, was written by defendant on the Columbus Municipal Employees Credit Union, dated and presented to Lazarus Department Store on December 24, 1980. Ceil Shaffer, Lazarus Security Department, testified that she received a check from the return check department of Lazarus on March 11, 1981; that she sent a notice of dishonor, by certified letter, to defendant notifying him that the check had been dishonored and that he had ten days to resolve the matter. The return receipt card signed by defendant was dated March 13, 1981. On March 21, Shaffer called defendant who stated that he did not have the money and to go ahead and file suit, and she suggested that he return the jewelry. Defendant stated that he could not return the jewelry and that he did not have the money to cover the check because he was paying on his Lazarus charge account. On March 27, 1981, Miss Shaffer filed a felony charge. On April 16, 1981, she received two money orders from defendant totaling $250 in envelopes postmarked April 8, 1981. A third money order receipt for $75, dated April 18, 1981 and payable to Lazarus, was produced but Miss Shaffer said, as far as she knew, the third money order had not been received by Lazarus. She stated that the charges would not have been brought against the defendant if he had paid sooner, and that she was not empowered to add the check to his balance on his Lazarus charge account as he had suggested.

Delores Coons, Security Department of the Columbus Municipal Credit Union, testified that a share draft account is similar to a checking account at a bank; that, if the share draft account is overdrafted, funds, if available, could be transferred from the customer's savings account but otherwise payment of the check is stopped; that the credit union has authority to close an account after three overdraft reports have been made; that

the first letter notifying defendant of the overdrafts was sent November 3, 1980; that the last two letters were sent December 1, 1980, when the account was closed; that she sent defendant a notice by regular mail that his account had been closed due to three or more overdrafts; and that, on December 8, 1980, a deposit of $240 was made in defendant's checking account.

She further testified that the credit union's statement ending November 30, 1980 reflected eleven bad checks and a share balance of minus $858.79, the amount of the checks not honored in defendant's account. She stated that defendant did not contact her about the letters or the closing of his account, and that the defendant did not have a share draft account at the credit union on December 24, 1980, when he wrote the Lazarus check.

Following the resting by the state of its case, the defendant testified on his own behalf stating that he was twenty-nine years old; that he had lived at 915 Atcheson for two and one-half years; that he lived there with his former wife, a fire fighter, when he opened the account at the credit union; that eight or nine checks bounced around October or November; and that he started sending money orders to cover the checks after he found out about December 28 that his share in the draft account had been closed. He stated that he did not recall receiving notice that his account had been closed and that, when he purchased the necklace at Lazarus on December 24, 1980, he was unaware his account was closed and denied any intent to defraud. He stated that he had prior convictions for aggravated menacing, petty theft, mail theft and unauthorized use of property. He said that he received the notice of dishonor from Lazarus and sent two money orders, dated March 24 and March 28, to them but that they were returned for insufficient postage and that he mailed them again in different envelopes; that the

money order dated March 24 was mailed on that day, eleven days after he received the notice of dishonor; and that his wife wrote three of the bad checks in November, and that he wrote the other eight.

After closing argument, the jury was charged and began deliberating. Later, the jury requested that the law of the case be re-read to them as there was some confusion. That portion of the charge relating to the law was read and the jury again retired. The jury returned a verdict of guilty from which defendant appeals.

Defendant brings four assignments of error:

"1. The trial court erred in instructing the jury on the statutory presumptions found in Revised Code Section 2913.11 because the presumptions had been rebutted by the defendant, and under Ohio law the presumptions disappeared from the case, and the court should not have mentioned them to the jury.

"2. The trial court erred in instructing the jury on the statutory presumptions in Revised Code Section 2913.11 because they are arbitrary and irrational and therefore a violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

"3. The trial court erred in instructing the jury on the presumptions found in Revised Code Section 2913.11 in that the instructions shifted the burden of proof to the defendant in violation of the Fourteenth Amendment's due process requirement that the state must prove every element of a criminal offense beyond a reasonable doubt.

"4. The trial court erred in overruling appellant's motions for acquittal."

At the outset of the trial, the trial court gave the jury instructions, which included instructions on presumption, as follows:

"Now, in this particular case, as I have said before, the Defendant is charged with passing bad checks. Before

you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 24th day of December, 1980, in Franklin County, the Defendant with the purpose to defraud, issued or caused to be issued a check, knowing that it would be dishonored or that its payment, therefore, would be refused. Knowledge by the Defendant that the check would be dishonored or its payment refused is an essential element of the charge.

"You may infer and indeed there is a presumption that the Defendant knew that the check would be dishonored. If you find, having considered all of the evidence, and find beyond a reasonable doubt that one, the Defendant had no account with the drawee of the check; in this particular case, it is the credit union, you say?

"MR. BOSLEY: Columbus Municipal Credit Union.

"THE COURT: Columbus Municipal Credit Union, either at the time of the issuance of the date set forth in the check, whichever is the latter, or that the check was properly refused payment for in such funds upon presentment within 30 days after issue, or the date set forth in it, whichever was the latter, and that the obligation was not paid or satisfied within ten days after notice of dishonor was received by the Defendant."

Later, during the instructions to the jury following the presentation of evidence and the arguments of counsel, the court included the following instructions in its charge:

"Now, in this particular case, the Defendant is charged with passing a bad check. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 24th day of December, 1980, in Franklin County, the Defendant with the purpose to defraud issued or caused to be issued a check knowing that it would be dishonored or its payment refused.

"Knowledge by the Defendant that the check would be dishonored or its payment refused is an essential element of the charge.

"You may infer that the Defendant knew that the check would be dishonored if, after you have considered all of the evidence, you find beyond a reasonable doubt that the Defendant had no account with the drawee, in this particular case, it was the credit union, and for the life of me, I can't remember the name of the credit union.

"MR. WILLIAMS: Columbus Municipal Employee Federal Credit Union.

"THE COURT: Thank you very much.

"Again, I'll repeat it. If, after you have considered all of the evidence, you find beyond a reasonable doubt that the Defendant had no account with the Columbus Municipal Credit Union, either at the time of the issue or the date set forth in the check, whichever was the latter, or secondly, that the check was properly refused payment for insufficient funds upon presentment, within 30 days after issue or the date set forth in it, whichever was the latter, and the obligation was not paid or satisfied within ten days after the Notice of Dishonor was received by the Defendant.

"That the Defendant may be presumed to know that a check will be dishonored if it is demonstrated beyond a reasonable doubt he has no account with the drawee, if there are insufficient funds in the account. The presumption of dishonor does not arise unless it is shown beyond a reasonable doubt that the check was presented for payment within 30 days of issue, and unless the check is not satisfied within ten days after Notice of Dishonor.

"I would note that the Defendant may rebut the presumption which I have previously alluded to by testimony of his own."

On each occasion, counsel for defendant objected on constitutional grounds to

the instructions concerning presumption of intent to defraud.

In his first assignment of error, defendant argues that defendant's testimony rebutted the presumption and, therefore, the court should not have mentioned the presumption to the jury but, rather, should have simply charged the jury on the elements of the offense and let the jury decide whether or not the state had proved the elements of the offense beyond a reasonable doubt without regard to the presumption. Defendant relies upon the law as enunciated by the Supreme Court in *Ayers* v. *Woodard* (1957), 166 Ohio St. 138, at 145 [1 O.O.2d 377], wherein the court stated that, if a defendant produced evidence of a substantial nature which, at least, counterbalanced the presumption operating in the plaintiff's favor, the presumption disappears. Defendant argues, therefore, that in this case the trial court should not have charged the jury that a presumption ever existed. Subsequently, the Supreme Court held in *State* v. *Myers* (1971), 26 Ohio St. 2d 190 [55 O.O.2d 447], that, with regard to a statutory presumption in a trial of a person for the offense of operating a motor vehicle while under the influence of alcohol, the presumption provided by R.C. 4511.19(B) may be included in the court's instructions to the jury and used by them in arriving at their decision, even though the prosecution introduced other evidence that defendant was under the influence of alcohol. In speaking for the court, Justice Duncan, at page 200, stated:

"If we were to hold that this statutory presumption is to be rendered nonproductive by a police officer testifying that in his opinion defendant was under the influence of alcohol, or the admission of other evidence descriptive of a defendant's appearance or behavior, we would be acting contra to the intended thrust of the statute. We thus believe this statutory presumption to be significantly different from the common-law presumption considered in *Ayers* v. *Woodard, supra.*"

We find that, applying the analogy of this case to that of *State* v. *Myers,* the legislature, by specifically setting forth the presumption as part of R.C. 2913.11(B), intended that the jury be made aware of the presumption in the instructions by the trial court. Defendant's first assignment of error is overruled.

In the second assignment of error, defendant claims that the presumption in this case is arbitrary and irrational. Courts in other states have found similar statutory provisions to be rationally related. See *State* v. *Haremza* (1973), 213 Kan. 201, 515 P. 2d 1217; *Tolbert* v. *State* (1975), 294 Ala. 738, 321 So. 2d 227; *Weldon* v. *State* (Fla. App. 1973), 287 So. 2d 133, appeal dismissed, 298 So. 2d 419; *Patterson* v. *Commonwealth* (Ky.App. 1977), 556 S.W. 2d 909, certiorari denied 435 U.S. 970. The court in *Haremza* stated:

"* * * Where a person has written an insufficient funds check and receives property or other consideration therefor from the payee of the check, and further, where the maker of the check has been notified that the check has not been paid and fails to make payment within seven days after such notice, we find that there is nothing unreasonable or arbitrary in making such fact *prima facie* evidence of fraudulent intent or guilty knowledge. It appears to us that in the usual course of things where one person gives another a check, he intends to induce such person to give up some property right in reliance that the check will be paid on presentation. The notice provision gives to the drawer of the check a final opportunity in which to make the check good and is peculiarly for his benefit. In a worthless check case it is obviously the defendant who has the more convenient access to evidence relating to his intent and knowledge. These are matters within his own head and usually are not within the

knowledge of the prosecutor." (*Id.* at 207.)

We agree that common experience does support the presumption that people do not write checks on nonexistent accounts or accounts with insufficient funds unless there is an intent to defraud. The soundness of the presumption is further enhanced by the provision permitting rectification of honest mistakes by payment within ten days of notice of dishonor. Therefore, the second assignment of error is overruled.

In the third assignment of error, the defendant claims that the trial court's instructions shifted the burden of proof and violated the Fourteenth Amendment. The defendant has standing to challenge this statutory presumption only to the extent that it was applied to him and, unless the court unconstitutionally applied the statute to him, he has no standing to challenge it as applied to other hypothetical situations. *County Court of Ulster County* v. *Allen* (1979), 442 U.S. 140, 154-155. Therefore, a ruling on the constitutionality of a statutory presumption "on its face" is not appropriate. *Id.* at 163.

Defendant claims that the presumption in this case was mandatory as opposed to being permissive. The difference between a mandatory and permissive presumption was described in *County Court of Ulster County.* A permissive presumption permits the trier of fact to infer the elemental fact from proof of the basic fact but there is no obligation to do so and there is no burden of any kind placed on the defendant. *Id.* at 157. Conversely, a mandatory presumption may affect the placement of the burden of proof beyond a reasonable doubt because the trier of fact is told that he is obligated to find the elemental fact from proof of the basic fact unless the defendant produces rebuttal evidence. *Id.* at 157.

Also, in *State* v. *Myers, supra,* the court held that a charge to the jury that the presumption may be controverted by other evidence, direct or circumstantial, was insufficient to describe the rebuttability of the presumption. The fact situation in *Myers* was slightly different in that the prosecutor misstated the effect of the presumption; the misstatement was approved by the court, and there was no explanation of the meaning of the rebuttable presumption. In this case, the court simply failed to explain the meaning of the rebuttable presumption.

In *County Court of Ulster County,* the court had to determine the constitutionality of a presumption that presence of a firearm in an automobile is evidence of possession by all occupants of the automobile. The court upheld the presumption stating that:

"The trial judge's instructions make it clear that the presumption was merely a part of the prosecution's case, that it gave rise to a permissive inference available only in certain circumstances, rather than a mandatory conclusion of possession, and that it could be ignored by the jury even if there was no affirmative proof offered by defendants in rebuttal. The judge explained that possession could be actual or constructive, but that constructive possession could not exist without the intent and ability to exercise control or dominion over the weapons. He also carefully instructed the jury that there is a mandatory presumption of innocence in favor of the defendants that controls unless it, as the exclusive trier of fact, is satisfied beyond a reasonable doubt that the defendants possessed the handguns in the manner described by the judge. In short, the instructions plainly directed the jury to consider all the circumstances tending to support or contradict the inference that all four occupants of the car had possession of the two loaded handguns and to decide the matter for itself without regard to how much evidence the defendants introduced." (*Id.* at 160-162.)

In *Sandstrom* v. *Montana* (1979), 442 U.S. 510, the defendant was convicted of deliberate homicide. The Supreme Court

struck down a presumption because it was mandatory and burden-shifting. The court in commenting on the instruction stated that:

"* * * Sandstrom's jurors were told that '[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.' They were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. * * *" (*Id.* at 515.)

The court in the instant case told the jury that the defendant must be acquitted unless the state produced evidence which convinced them beyond a reasonable doubt of every essential element of the crime charged in the indictment. The court gave an instruction on circumstantial evidence, including inferences which may be drawn from proof of facts by direct evidence. The court told the jury that "you may infer," or that the defendant "might be presumed" to know that the check would be dishonored if the facts forming the basis of the presumption were proven beyond a reasonable doubt. They were told that the defendant "may" rebut the presumption with his own testimony, not that he was required to. The court also gave an instruction on the mental element of "knowingly," and stated that knowledge was to be determined from all the facts and circumstances in evidence.

While the instruction which is couched in permissive language is not mandatory, the trial court did not set out the meaning of a rebuttable presumption. The court in *Sandstrom* noted that there were two ways in which instructions may be improperly interpreted by a reasonable juror:

"First, a reasonable jury could well have interpreted the presumption as 'conclusive,' that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. *Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their 'ordinary' consequences), unless the defendant proved the contrary by some quantum of proof which may well have been considerably greater than 'some' evidence — thus effectively shifting the burden of persuasion on the element of intent.* Numerous federal and state courts have warned that instructions of the type given here can be interpreted in just these ways. * * *" (*Id.* at 517, emphasis added.)

Herein lies the problem. Without guidance as to the nature of a rebuttable presumption, there is no way to know whether the jury has properly or improperly reached its verdict. In this regard, even a permissive presumption may have the effect of shifting the burden of persuasion. See, also, *Sandstrom*, at 524. Among the cases cited by the court in *Sandstrom* is *State* v. *Roberts* (1977), 88 Wash. 2d 337, 562 P. 2d 1259, wherein the Supreme Court of Washington was confronted with an instruction which failed to set out how a presumption may be overcome. The court stated as follows:

"The instruction here challenged differs from that considered in *Kroll* and *Mullaney* in that it is silent as to how the presumption, once created, may be overcome. The State has contended that, because this instruction does not on its face compel 'anyone to do anything,' it cannot be said to result in an impermissible shift of the burden of persuasion in the face of other instructions requiring the State to establish proof beyond a reasonable doubt of every element of the crime charged. *Mullaney* holds that the ultimate burden must lie with the State. *The challenged instruction represents an effort by the prosecution to gain the benefits of the presumption by announcing its existence and then allowing the jury to determine what to do with it. Faced with such an instruction the defendant is required to come forward and show, by some unstated standard of proof, facts refuting the presumption. Such a result is no*

*longer permissible.* See *Perkins* v. *State,* 528 S.W. 2d 598 (Tex. Crim. App. 1975). We read *Mullaney* as prohibiting the use in a criminal case of any presumption which is not expressly limited to placing a burden, in the proper circumstances, of producing evidence upon the defendant. This instruction is not so limited." (*Id.* at 341-342, emphasis added.)

In the case at bar, the trial court, in its instructions, mentioned only once that the presumption is rebuttable and no explanation as to its proper use by the jury was given. The omission of a description of the rebuttable presumption is fatal. Both *Myers* and *Sandstrom* indicate that the trial court must adequately instruct the jury on the nature and effect of the rebuttable presumption in a criminal case such as the one before us. Therefore, based on the foregoing reasons, the third assignment of error is sustained.

In the fourth assignment of error, defendant claims that the evidence presented was insufficient to support a conviction. The standard to be applied is set out in the syllabus to the court's opinion in *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261 [9 O.O.3d 401]:

"Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

A review of the facts in this case clearly indicates that there was sufficient evidence upon which reasonable minds could conclude that defendant, with purpose to defraud, issued or transferred a check knowing that it would be dishonored. The evidence showed that defendant gave a check to Lazarus, on December 24, 1980, in the amount of $263.10, which was returned due to the account being closed. Mrs. Coons testified that the account had been closed on December 1, 1980, and that it was closed on December 24, 1980 — the date on the check. Notice of the closing of the account was sent on December 1, 1980, by regular mail, and was not returned as undelivered. Notices were also sent to defendant in November 1980 informing him of checks returned for lack of funds, and defendant acknowledged receiving at least two of those notices.

The records of defendant's account revealed an ending balance of zero, or under, since the June 30, 1980 statement. The balance as of October 31, 1980 was minus $80.48 and was down to minus $858.79 by November 30, 1980. The jury could well find it unreasonable that defendant would expect the deposits, as recorded in his notebook, of $150 on October 14, 1980, $150 on November 6, 1980, and the $240 deposit in December, to cover more than one thousand dollars' worth of checks. Defendant's fourth assignment of error is overruled.

Based on the foregoing reasons, the judgment is affirmed in part, reversed in part, and the case remanded for a new trial.

*Judgment affirmed in part,*
*reversed in part and*
*case remanded.*

REILLY and NORRIS, JJ., concur.