THE STATE OF OHIO, APPELLANT, *v.* JONES, APPELLEE.

[Cite as *State v. Jones* (2000), 88 Ohio St.3d 430.]

(Nos. 99–613 and 99–769—Submitted January
25, 2000—Decided May 17, 2000.)

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Andrew T. French,* Assistant Prosecuting Attorney, for appellant.

*Arvin S. Miller,* Montgomery County Assistant Public Defender, for appellee.

**DOUGLAS, J.** The issue certified for our review is whether "an arrest in violation of R.C. 2935.26 constitute[s] an unreasonable seizure under the Fourth

Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, thereby requiring suppression [in accordance with the exclusionary rule] of evidence seized as a consequence of the violation of that statute." For the reasons that follow, we answer the certified issue in the affirmative and affirm the judgment of the court of appeals.

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, *Wolf v. Colorado* (1949), 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause * * *." Section 14, Article I of the Ohio Constitution contains nearly identical language, and this court has determined that protections provided by Ohio's Constitution are coextensive with those provided by the United States Constitution. *State v. Robinette* (1997), 80 Ohio St.3d 234, 238, 685 N.E.2d 762, 766.

Although the Fourth Amendment does not explicitly provide that violations of its provisions will result in suppression of evidence obtained as a result of the violation, the United States Supreme Court has held that the exclusion of that evidence is an essential part of the Fourth Amendment. *Weeks v. United States* (1914), 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. This is known as the exclusionary rule. *Id.*

The main purpose of the exclusionary rule is to remove the incentive to violate the Fourth Amendment and thereby deter police from performing future unconstitutional searches and seizures. *Wolf v. Colorado, supra; Elkins v. United States* (1960), 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669; *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The Fourth Amendment exclusionary rule was made applicable to the states in *Mapp v. Ohio, supra.*

In the case at bar, appellee was arrested for violating Section 75.02(A) of the Dayton Revised Code of General Ordinances ("jaywalking"), a minor misdemeanor.[3] In Ohio, arrests for minor misdemeanor offenses are governed by R.C. 2935.26, which provides:

---

3. Section 75.02(A) of the Dayton Revised Code of General Ordinances provides:

"Where usable walks or paths parallel a street or highway, pedestrians shall not travel in, along, or on the vehicular traveled portion of such street or highway, except to cross the roadway in the manner provided by law."

Pursuant to Section 70.99 of the Dayton Revised Code of General Ordinances, a violation of Section 75.02(A) is a minor misdemeanor. Section 70.99 provides:

"Whoever violates any provision of this title, for which no penalty is otherwise provided in this section, is guilty of a minor misdemeanor on a first offense."

"(A) Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:

"(1) The offender requires medical care or is unable to provide for his own safety.

"(2) The offender cannot or will not offer satisfactory evidence of his identity.

"(3) The offender refuses to sign the citation.

"(4) The offender has previously been issued a citation for the commission of that misdemeanor and has failed to do one of the following:

"(a) Appear at the time and place stated in the citation;

"(b) Comply with division (C) of this section." (Division [C] provides means of pleading guilty and paying the fine without a court appearance.)

Appellant concedes that none of the exceptions specified in R.C. 2935.26 was present in this case. In making this concession, appellant admits that Officer Swisher violated Ohio law when he arrested appellee. Nevertheless, appellant contends that the trial court and the court of appeals erred in suppressing the evidence obtained incident to appellee's arrest because police conduct violative of state law, but not violative of constitutional rights, does not trigger the exclusionary rule.

Appellant's assertion that the exclusionary rule will not ordinarily be applied to evidence unless it was obtained through a violation of constitutional rights is a correct statement of the law as set forth in the court's decision in *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 18 O.O.3d 435, 416 N.E.2d 598. In *Hollen,* a municipal police officer arrested a suspect for a misdemeanor offense outside the officer's jurisdiction, in violation of Ohio law. *Id.* at 233–234, 18 O.O.3d at 436– 437, 416 N.E.2d at 599–600. The court of appeals held that, because the arrest was unlawful, evidence obtained incident to the arrest should be suppressed. This court held that the officer *had probable cause to arrest* Hollen and so, even though the arrest had violated Ohio law, it was not a violation of the Fourth Amendment. Finding no constitutional violation to trigger the exclusionary rule, the court reversed the court of appeals' decision to suppress the evidence. *Id.* at 235, 18 O.O.3d at 437–438, 416 N.E.2d at 600.

Moreover, in a long line of cases, this court has consistently refused to apply the exclusionary rule to evidence obtained incident to police conduct violative of state law but not violative of constitutional rights. See, *e.g., Hilliard v. Elfrink* (1996), 77 Ohio St.3d 155, 672 N.E.2d 166, and *State v. Myers* (1971), 26 Ohio St.2d 190, 55 O.O.2d 447, 271 N.E.2d 245 (exclusionary rule does not apply when officers, in violation of a statute, fail to advise an OMVI suspect that he could

have his own blood-alcohol test performed); *State v. Downs* (1977), 51 Ohio St.2d 47, 5 O.O.3d 30, 364 N.E.2d 1140 (exclusionary rule does not apply when officers violate Crim.R. 41 with respect to the return of a search warrant); *State v. Davis* (1978), 56 Ohio St.2d 51, 10 O.O.3d 87, 381 N.E.2d 641 (exclusionary rule does not apply when fingerprint evidence is obtained in violation of a statute).[4]

However, as the court of appeals correctly pointed out, the rule of law set forth above only begs the question of whether a violation of R.C. 2935.26 has constitutional implications. Appellee urges us to hold that, unlike the statutory violations in the above-referenced cases, an arrest for a minor misdemeanor, made in violation of R.C. 2935.26, is a constitutional violation as well as a statutory violation. Appellant, on the other hand, contends that a violation of R.C. 2935.26 does not have constitutional significance and claims that this court acknowledged as much in *State v. Slatter* (1981), 66 Ohio St.2d 452, 20 O.O.3d 383, 423 N.E.2d 100.

The facts in *Slatter* were similar to those of the instant matter. Police officers arrested Slatter for the commission of a minor misdemeanor offense. Finding that none of the exceptions in R.C. 2935.26 had been met, the trial court suppressed the evidence obtained incident to the unlawful arrest.

Whereas the facts of *Slatter* were similar to the case at bar, the issue presented to this court was quite different. In *Slatter*, the state argued that R.C 2935.26 was unconstitutional because it intruded upon the court's rule-making powers under Section 5(B), Article IV of the Ohio Constitution. We found that the statute's provisions were not in conflict with the Ohio Rules of Criminal Procedure and rejected the state's argument. *Id.* at 458, 20 O.O.3d at 387, 423 N.E.2d at 104. The issue in the case now before us, whether an arrest in violation of R.C. 2935.26 is also a constitutional violation, was not raised in *Slatter*. Therefore, though some of the language in *Slatter* may imply that R.C. 2935.26 does not have constitutional implications, we do not find that language controlling here.[5]

Having determined that *Slatter* does not decide the issue in the instant case, we now turn our attention to appellee's contention that an arrest for a minor misdemeanor, made in violation of R.C. 2935.26, is a violation of the Fourth

---

4. The court made clear in *Davis* that there was no constitutional violation because Davis had waived his Fourth Amendment rights by consenting to being fingerprinted and, thus, the violation was purely statutory. *Davis*, 56 Ohio St.2d at 57, 10 O.O.3d at 90, 381 N.E.2d at 646.

5. In *Slatter* we stated that R.C. 2935.26 "created" a right of freedom from arrest for one accused of the commission of a minor misdemeanor " 'where no such right existed before.' " *Slatter*, 66 Ohio St.2d at 458, 20 O.O.3d at 387, 423 N.E.2d at 104.

Amendment. In this regard, appellee argues that such an arrest is an unreasonable seizure.

In determining whether a particular governmental action violates the reasonableness requirement of the Fourth Amendment, the United States Supreme Court first examines whether the action was regarded as unlawful when the Amendment was enacted.[6] *Wyoming v. Houghton* (1999), 526 U.S. 295, ——, 119 S.Ct. 1297, 1300, 143 L.Ed.2d 408, 414. If, however, at the time of the Fourth Amendment's ratification there was no clear practice either allowing or forbidding the type of governmental action at issue, then its reasonableness is judged by weighing the competing interests involved. That is, the extent of the action's intrusion on the individual's liberty and privacy is weighed against the need for the intrusion to promote legitimate governmental interests ("balancing test"). *Vernonia School District 47J v. Acton* (1995), 515 U.S. 646, 652–653, 115 S.Ct. 2386, 2390, 132 L.Ed.2d 564, 574; *Wyoming v. Houghton*, 526 U.S. at ——, 119 S.Ct. at 1300, 143 L.Ed.2d at 414.

The governmental action at issue in the case at bar is a full custodial arrest. The first prong of the reasonableness test requires that we determine, if possible, whether officers were permitted to arrest persons at common law for minor misdemeanor offenses. Because the term "minor misdemeanor" was not used at common law and because many modern statutory offenses do not have common-law predecessors, *Blanton v. North Las Vegas, Nevada* (1989), 489 U.S. 538, 541, 109 S.Ct. 1289, 1292, 103 L.Ed.2d 550, 555, fn. 5, we cannot determine whether at common law there was a clear practice either allowing or forbidding arrests for offenses that are today classified as minor misdemeanors. Nevertheless, we will discuss the types of offenses for which officers were permitted to arrest at common law and compare those to offenses classified as minor misdemeanors today.

---

6. We note that although the United States Supreme Court looks to what was acceptable at the time the Fourth Amendment was enacted, it has also cautioned that "[t]he significance accorded to [the common law], * * * must be kept in perspective, for our decisions in this area have not 'simply frozen into constitutional law those enforcement practices that existed at the time of the Fourth Amendment's passage.' *Payton v. New York*, 445 U.S. at 591 [100 S.Ct. at 1382–1383, 63 L.Ed.2d at 654], n. 33. The common-law rules governing searches and arrests evolved in a society far simpler than ours is today. Crime has changed, as have the means of law enforcement, and it would therefore be naive to assume that those actions a constable could take in an English or American village three centuries ago should necessarily govern what we, as a society, now regard as proper. Cf. *Katz v. United States*, 389 U.S. 347, 352–353 [88 S.Ct. 507, 511–512, 19 L.Ed.2d 576, 582–583] (1967). Instead, the Amendment's prohibition against 'unreasonable searches and seizures' must be interpreted 'in light of contemporary norms and conditions.' *Payton v. New York, supra*, at 591 [100 S.Ct. at 1382–1383, 63 L.Ed.2d at 654], n. 33." *Steagald v. United States* (1981), 451 U.S. 204, 217, 101 S.Ct. 1642, 1650, 68 L.Ed.2d 38, 48, fn. 10.

At common law, criminal offenses were classified into three categories: treason, felonies, and misdemeanors. 1 LaFave & Scott, Substantive Criminal Law (1986) 41, Section 1.6, fn. 1. Only crimes punishable by a total forfeiture of the offender's lands and/or goods were considered felonies. *Kurtz v. Moffitt* (1885), 115 U.S. 487, 499, 6 S.Ct. 148, 152, 29 L.Ed. 458, 460. Many crimes that are classified as felonies under federal or state law today were classified as misdemeanors at common law, *e.g.*, assault with intent to rob, murder, or rape, false imprisonment, kidnapping, and forcible and violent entry. *United States v. Watson* (1976), 423 U.S. 411, 439–440, 96 S.Ct. 820, 835–836, 46 L.Ed.2d 598, 618 (Marshall, J., dissenting).

Officers were permitted to arrest without a warrant at common law only for offenses classified as felonies and for misdemeanors constituting a breach of the peace committed in the officer's presence. *Carroll v. United States* (1925), 267 U.S. 132, 156–157, 45 S.Ct. 280, 286, 69 L.Ed. 543, 553. Breaches of the peace at common law were offenses involving conduct that destroyed or menaced public order and tranquility such as "violent acts * * * and words likely to produce violence in others." *Cantwell v. Connecticut* (1940), 310 U.S. 296, 308, 60 S.Ct. 900, 905, 84 L.Ed. 1213, 1220.

We believe that the offenses classified as minor misdemeanors today would not have been considered breaches of the peace at common law because offenses classified as minor misdemeanors are those offenses that society considers to be the least serious. Indeed, the maximum penalty for committing a minor misdemeanor offense is a $100 fine. Crim.R. 4.1(B); R.C. 2901.02(G). Thus, it seems unlikely that officers at common law would have been permitted to arrest, at least without a warrant, persons committing offenses that today are classified as minor misdemeanors. Nevertheless, because we are unable to say that there was a clear practice forbidding such arrests, we now turn to the balancing test to determine whether an arrest for a minor misdemeanor, in violation of R.C. 2935.26, is reasonable.

As mentioned above, the balancing test requires that we weigh the competing interests surrounding the governmental action at issue. That is, we must evaluate on the one hand the degree to which the governmental action intrudes upon a person's liberty and privacy, and, on the other hand, the degree to which the intrusion is necessary for the promotion of legitimate governmental interests. *Wyoming v. Houghton*, 526 U.S. at ——, 119 S.Ct. at 1300, 143 L.Ed.2d at 414.

As previously indicated, the governmental action at issue in this case is a full custodial arrest. An arrest is a "serious personal intrusion." *United States v. Watson, supra*, at 428, 96 S.Ct. at 830, 46 L.Ed.2d at 612 (Powell, J., concurring). When arrested, a person is often handcuffed and is forcibly taken to an unfamiliar place. While under arrest, the person is forced to forfeit control of his person

and his movements. *Id.* at 446, 96 S.Ct. at 839, 46 L.Ed.2d at 622 (Marshall, J., dissenting). In this manner, the arrested person's freedom, which is "the very essence of constitutional liberty," *Gouled v. United States* (1921), 255 U.S. 298, 304, 41 S.Ct. 261, 263, 65 L.Ed. 647, 650, is severely limited.

In addition to the constraints on liberty, once placed under arrest a person is subjected to numerous invasions of his or her privacy. Officers may perform a full search of an arrestee's person regardless of the offense prompting the arrest. *United States v. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; *Gustafson v. Florida* (1973), 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456. Describing the intrusion occasioned by a patdown, which is less thorough than a full search, the United States Supreme Court stated that "[e]ven a limited search of the outer clothing * * * constitutes a severe * * * intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Terry v. Ohio, supra,* 392 U.S. at 24–25, 88 S.Ct. at 1881–1882, 20 L.Ed.2d at 908. Clearly, the intrusion is magnified when the person is subjected to a full search.

Against the weight of an arrest's intrusion upon a person's liberty and privacy, we must weigh the government's interests in making an arrest for a minor misdemeanor when none of the exceptions in R.C. 2935.26 is present. The government's interests in making arrests are enforcing the laws and protecting the public. An offense classified as a minor misdemeanor is, by definition, one for which the maximum penalty is a fine of $100. Crim.R. 4.1(B); R.C. 2901.02(G). That is, even if the offender is found guilty beyond a reasonable doubt of committing the offense, he will not be incarcerated. By subjecting violators of minor misdemeanor offenses only to small fines, the legislature has identified the extent of intrusion that it feels is necessary to enforce those laws.[7]

---

7. Following is a list of some offenses that are classified as minor misdemeanors by the Ohio Revised Code. This list is intended merely to illustrate the types of offenses classified as minor misdemeanors and is by no means exhaustive. A pedestrian crossing a street, between intersections, in a place other than a marked crosswalk (R.C. 4511.48[C] ), walking in the left-hand side of a crosswalk (R.C. 4511.49), walking upon the roadway when a useable sidewalk is provided (R.C. 4511.50[A] ), riding a bicycle with a seat that is not firmly attached or with handle bars that are more than fifteen inches higher than the seat (R.C. 4511.53), and riding a bicycle that is not equipped with a bell or other sounding device giving a signal audible for a distance of at least one hundred feet (R.C. 4511.56[B] ). The following minor misdemeanor offenses are committed while operating a motor vehicle: failing to signal at least one hundred feet before turning or making a lane change (R.C. 4511.39), failing to stop the engine, remove the key, and engage the parking brake when parking and leaving the vehicle unattended (R.C. 4511.661), and parking the vehicle with its right side wheels further than twelve inches from the curb (R.C. 4511.69).

We note that the classification of each of the offenses listed above is increased from a minor misdemeanor to a misdemeanor of the fourth degree if the offender is a repeat offender. R.C. 4511.99(D)(1)(b).

Consequently, it is not necessary for an officer to arrest an offender for committing a minor misdemeanor offense unless he has reason to believe that the offender will not respond to the summons or pay the fine. R.C. 2935.26 protects an officer's interest, and the interest of the public, in making arrests in those situations by allowing officers to arrest the offenders that are least likely to respond or pay, *i.e.*, offenders who fail to provide adequate identification, offenders who refuse to sign the citation, and offenders who failed, in the past, to pay a fine assessed against the offender for a previous commission of the same misdemeanor offense. Thus, effective law enforcement is not impaired by refusing to allow officers to arrest individuals for minor misdemeanor offenses when none of the exceptions set forth in R.C. 2935.26 applies.

Clearly, the government's interests in making a full custodial arrest for a minor misdemeanor offense, absent any R.C. 2935.26 exceptions, are minimal and are outweighed by the serious intrusion upon a person's liberty and privacy that, necessarily, arises out of an arrest. Accordingly, we find that a full custodial arrest for a minor misdemeanor, when none of the exceptions set forth in R.C. 2935.26 exists, is an unreasonable seizure under the Fourth Amendment.

The United States Supreme Court has not addressed the issue of whether a full custodial arrest for a minor offense is, in some circumstances, an unreasonable seizure. However, Justice Stewart suggested that it was an unreasonable seizure in his concurring opinion in *Gustafson v. Florida, supra,* 414 U.S. at 266, 94 S.Ct. at 492, 38 L.Ed.2d at 462. In *Gustafson,* a police officer arrested Gustafson for failure to have his driver's license in his possession while driving. While searching Gustafson incident to that arrest, the officer discovered marijuana cigarettes.

The court rejected Gustafson's argument that a full-scale body search incident to an arrest for a traffic violation violated the Fourth Amendment. Gustafson did not argue that the *arrest* itself was unconstitutional. In his concurring opinion, Justice Stewart stated that "a persuasive claim might have been made * * * that the custodial arrest of the petitioner for a minor traffic offense violated his rights under the Fourth and Fourteenth Amendments." *Id.* at 266–267, 94 S.Ct. at 492, 38 L.Ed.2d at 462. This statement clearly adds support to our decision in the instant case.

For the foregoing reasons, we hold that absent one or more of the exceptions specified in R.C. 2935.26, a full custodial arrest for a minor misdemeanor offense violates the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, and evidence obtained incident to such an arrest is subject to suppression in accordance with the exclusionary rule. Therefore, the court of appeals did not err in affirming the trial court's judgment to

suppress the evidence obtained incident to appellee's arrest. Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.