OPINION
Robert Wilcox appeals from a judgment of the Montgomery County Court of Common Pleas, which imposed a sentence, fine, and license suspension for possession of crack cocaine in an amount between twenty-five and one hundred grams. Wilcox had unsuccessfully moved to suppress evidence, and this appeal concerns the suppression motion.
The state's evidence established the following facts.
On October 31, 2000 at approximately 9:30 or 10:00 p.m., Officer Timothy Reboulet and his partner Officer Rike were patrolling the area of Parkside Homes on bicycles. They were in an area that police referred to as the "electrical box," apparently because there is an electrical box where people had been congregating and where police had made several arrests in the months prior to the arrest of Wilcox. Officers Reboulet and Rike rounded a corner and spotted Wilcox near 518 East Helena Street. The resident of that address, Walter Bankston, was known to police and was also outside when the officers rounded the corner. Reboulet was unsure at the hearing on Wilcox's motion to suppress whether Wilcox had been walking toward 518 East Helena Street or had been standing on the street. Wilcox and Bankston were the only individuals the officers observed in the area.
Reboulet testified that Wilcox had gotten a "deer in the headlights look" when he saw the officers and had "sprinted" toward 518 East Helena Street. Reboulet testified further that Wilcox had put his hand into the right pocket of his jacket and had then tried to remove it in a manner that caused Reboulet to believe that Wilcox was trying to remove a firearm. During his sprint toward the building and while he was attempting to extricate his hand from his jacket pocket, Wilcox continually looked back toward the officers. Based on their belief that Wilcox was armed, the officers gave chase and caught up with him on the porch of 518 East Helena Street. They drew their weapons and stood on either side of Wilcox. Reboulet testified that they had not been concerned with Bankston, who was also on the porch, because they knew him. Officer Rike yelled, "Police, take your hand out of your pocket." Wilcox then dove to the ground face first and removed his hand from his pocket.
When Reboulet approached the prone Wilcox, he smelled an odor of marijuana and commented to Rike about it. Reboulet then proceeded to perform a pat-down search on Wilcox. During the search, he felt a plastic bag sticking out of Wilcox's coat pocket and "knew it to be marijuana." Reboulet testified that he had then asked Wilcox, "Is that what you were grabbin' at was your marijuana?," and that Wilcox had answered, "Yeah." Wilcox was then handcuffed and arrested. After the arrest, Reboulet searched Wilcox further and located a baggy containing "a large amount of white chunky substance" that he believed to be crack cocaine.
A grand jury indicted Wilcox on November 7, 2000 for possession of crack cocaine in an amount between twenty-five and one hundred grams. Wilcox initially pled not guilty to the charge. He filed a motion to suppress on November 22, 2000, arguing that the cocaine was obtained as a result of an unlawful search of his person. That motion was overruled by the trial court on January 9, 2001. Wilcox subsequently pled no contest to the charge and was found guilty. On May 14, 2001, the trial court sentenced him to four years imprisonment, a fine of $10,000, and a six month suspension of his driver's license.
Wilcox raises two assignments of error on appeal. Because these two assignments of error raise essentially the same argument, we will consider them together.
 I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.
 II. THE TRIAL COURT'S DECISION ON APPELLANT'S MOTION TO SUPPRESS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Under both assignments of error, Wilcox argues that, under his version of the facts, the police did not have probable cause or reasonable suspicion to stop or search him. The state counters that, under the officer's version of the facts, the police had reasonable suspicion to stop and frisk Wilcox pursuant to Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868.
Wilcox's version of the facts differs significantly from that of Officer Reboulet. He testified at the suppression hearing that he had not seen the officers until they had ordered him to freeze, that he did not run from the officers, and that he was never on the porch of 518 East Helena Street. He maintained that, within seconds after he had been dropped off at the apartment complex, the officers had stopped him and had searched him without provocation. Wilcox also presented the testimony of the friend who dropped him off and the testimony of a witness to the incident, who testified that the officers had stopped Wilcox immediately after he exited the vehicle.
Initially, we note that the following standard governs our review of a trial court's decision regarding a motion to suppress:
 [W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.
State v. Retherford (1994), 93 Ohio App.3d 586.
In its denial of Wilcox's motion to suppress, the trial court found that the state's version of the facts was more credible. Based on our review of the record, we find that the state's version was supported by competent, credible evidence in the form of Officer Reboulet's testimony. Therefore, we must accept the trial court's findings of fact and determine whether, under Officer Reboulet's version of events, the stop and search of Wilcox was lawful.
The state argues that the officers had reasonable suspicion pursuant to Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, to stop and frisk Wilcox for weapons. To justify a stop and frisk under Terry, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id., 88 S.Ct. at 1880. However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 1883. A Terry stop, however, is justified solely by "the protection of the police officer or others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Id. at 1884.
In the present case, we believe that the initial stop and pat down was justified under Terry by Officer Reboulet's suspicion that Wilcox was carrying a weapon. Officers Reboulet and Rike were on bicycle patrol in an area known to be high in criminal activity. It was late in the evening and after dark, although Reboulet testified that the area around the electrical box had been "like daytime." Most importantly, Wilcox ran from the officers upon seeing them and appeared to be trying to remove something from his coat pocket. Under the circumstances, a reasonably prudent person would be warranted in believing that he was in danger. Thus, the officers had reasonable suspicion under Terry to stop Wilcox and pat him down for weapons.
The state, however, attempts to justify the subsequent arrest and the search that uncovered the cocaine under Terry as well. The officers' actions once they had determined that Wilcox had no weapons exceeded the scope of a Terry stop. This principle has been articulated by the Supreme Court of Ohio as follows:
 Under Terry and its progeny, the police may search only for weapons when conducting a pat down of the suspect. `A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. * * * Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby * * *.' The protective pat down under Terry is limited in scope to this protective purpose and cannot be employed by the searching officer to search for evidence of crime. Obviously, once the officer determines from his sense of touch that an object is not a weapon, the pat down frisk must stop. The officer, having satisfied himself or herself that the suspect has no weapon, is not justified in employing Terry as a pretext for a search for contraband.
State v. Mackey (2001), 141 Ohio App.3d 604, 611-12, citing State v. Evans (1993), 67 Ohio St.3d 405, 414. Thus, the officers needed probable cause to justify their arrest of Wilcox and the subsequent search that revealed the crack cocaine. Although the state makes no argument with regard to the officers' probable cause to arrest Wilcox, we find that the officers did have probable cause to arrest Wilcox for possession of marijuana.
In addition to Wilcox's behavior in running from the police, Reboulet testified that he had smelled marijuana on Wilcox when approaching him to conduct the pat down search. The Supreme Court of Ohio has held that "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." State v. Moore (2000), 90 Ohio St.3d 47, 53. However, Reboulet also testified that he felt the baggy of marijuana in Wilcox's pocket and knew it to be marijuana. Finally, Reboulet testified that Wilcox had admitted that he possessed marijuana when he answered "Yeah" to Reboulet's question, "Is that what you were grabbin' at was your marijuana?" These factors were sufficient to give Officer Reboulet probable cause to arrest Wilcox for possession of marijuana.
We note that the Supreme Court of Ohio recently held that, where none of the exceptions listed in R.C. 2935.26 is present, "a full custodial arrest for a minor misdemeanor offense violates the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, and evidence obtained incident to such an arrest is subject to suppression in accordance with the exclusionary rule." State v. Jones (2000), 88 Ohio St.3d 430, 440. However, one of the exceptions to R.C.2935.26 is present in this case. R.C. 2935.26(A)(2) reads "[t]he offender cannot or will not offer satisfactory evidence of his identity." In this case, Wilcox refused to give his name to the officers, despite being asked several times. Therefore, the officers did not violate theFourth Amendment or the Ohio Constitution by arresting him for the minor misdemeanor of marijuana possession.
Because the officers lawfully arrested Wilcox, the subsequent search of his person which revealed the crack cocaine was justified under the search warrant exception for a search incident to a lawful arrest. See United States v. Robinson (1973), 414 U.S. 218, 94 S.Ct. 467, syllabus. For the above reasons, the seizure of the crack cocaine was lawful, and the trial court did not err in overruling Wilcox's motion to suppress.
The first and second assignments of error are overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.