OPINION
Plaintiff-appellant the State of Ohio appeals from an order suppressing evidence at the request of defendant-appellee Robert Hudson. The State argues that the trial court erred in finding that the State had violated R.C. 2925.51(E) by: (1) failing to preserve an adequate sample of the substance forming the basis of a Possession of Crack Cocaine charge against Hudson, so that Hudson's independent laboratory analyst could conduct a thorough scientific analysis of the substance to determine its identity; and (2) failing to notify Hudson or his attorney that an adequate sample could not be preserved and given to Hudson's analyst, in order to provide Hudson with an opportunity to request that his analyst be present at an analysis of the substance. The State argues, in the alternative, that the trial court erred in finding that the prosecutor had acted in "bad faith" by failing to notify the defense prior to conducting a second round of tests on the substance, after Hudson's analyst had determined that there was an insufficient amount of the substance to permit an independent analysis of it, and that, as a result, Hudson's constitutional, as well as statutory, rights were violated.
We conclude that there is sufficient evidence to support the trial court's finding that the State violated R.C. 2925.51(E) by failing to preserve a sufficient amount of the substance that forms the basis of the charge against Hudson, to allow for an independent analysis of the substance. However, we conclude that the trial court erred in finding that the State violated R.C.2925.51(E) by failing to notify the defense prior to conducting a second round of tests on the substance, after Hudson's analyst had determined that there was an insufficient amount of the substance available to allow for an independent analysis of it, because R.C.2925.51(E) does not require the prosecutor to inform the defense of his plans to conduct further testing of the substance in that circumstance. Therefore, the trial court erred by predicating its finding of bad faith on that failure. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for proceedings consistent with this opinion.
 I
On November 15, 1998, Hudson was a passenger in an automobile that was stopped by officers from the Dayton Police Department. The officers subsequently conducted a pat-down search of Hudson, and discovered a small glass pipe, with a piece of rubber and a metal rod. The officers performed a Cobalt Reagent field test on the pipe, which indicated the presence of crack cocaine. Hudson was placed under arrest for Possession of Crack Cocaine.
The evidence seized from Hudson was sent to the Miami Valley Regional Crime Laboratory, where it was analyzed by forensic chemist Julie Bowling. Bowling first ran a "preliminary test" on the substance, which indicated the presence of cocaine, and then a "confirmatory test," known as gas chromatography/mass spectrometry ("GC/MS"), which confirmed the presence of cocaine.
Hudson was subsequently indicted on one count of Possession of Crack Cocaine. The trial court appointed Larry Dehus to conduct an independent analysis of the contents of the pipe on Hudson's behalf. Dehus conducted two preliminary tests ("thin-layer Chromatography" and "Ultraviolet Spectroscopy") on the substance, both of which indicated the presence of cocaine. However, Dehus did not perform an infrared spectroscopy ("IR") test, which could have confirmed the presence of cocaine, because he concluded that he lacked a sufficient quantity of the substance to do so. As a result of Dehus's findings, Hudson filed a Motion to Dismiss or Suppress, asserting that the State had deprived him of his constitutional rights to confront the evidence against him, due process, and a fair trial, because the State had failed to preserve a sufficient sample of the substance alleged to be crack cocaine to allow for an independent analysis of it, or to notify the defense so that it could request that an independent analyst be present when the State tested the substance, pursuant to R.C. 2925.51(E).
Hudson's Motion to Dismiss or Suppress was consolidated with that of a similarly-situated defendant, Gerald (a.k.a. Jerald) Christian. In an apparently unrelated incident, Dayton police had seized a glass tube with a piece of rubber and a metal rod from Christian on November 9, 1998. The evidence seized from Christian was sent to the Miami Valley Regional Crime Laboratory, where it was analyzed by Michael Wathen, a forensic chemist and the laboratory supervisor. Wathen performed a GC/MS test on the evidence, which revealed the presence of cocaine. Once again, the trial court appointed Dehus to conduct an independent analysis of the substance on Christian's behalf. Dehus performed two preliminary tests, both of which indicated the presence of cocaine. However, Dehus again determined that there was an insufficient amount of the substance available to perform an IR test, which could have confirmed the presence of cocaine. As a result, Christian's counsel moved to suppress the evidence or dismiss the case.
Approximately one week before the scheduled hearing on the consolidated motions, the prosecutor asked Bowling and Wathen to perform further tests on the evidence seized from Hudson and Christian. Bowling first performed an IR test on the evidence seized from Hudson, but she "got a poor spectrum for cocaine that really was not clean enough to call." She then performed a second GC/MS test, which again confirmed the presence of cocaine. Wathen performed both an IR and GC/MS test on the evidence seized from Christian. Both tests confirmed the presence of cocaine. Neither Hudson, Christian, nor Dehus were notified prior to this second round of testing.
After holding a suppression hearing, at which, Bowling, Wathen, and Dehus testified, the trial court issued a Decision, Order and Entry Sustaining Defendants' Motions to Suppress/and to Dismiss. The trial court found that the State had violated R.C.2925.51(E) by failing to preserve a sufficient amount of the substance to permit Hudson's analyst to conduct an independent analysis of it, and by failing to notify Hudson or his attorney prior to conducting any scientific analysis on the substance, so that they could have their independent analyst present for the State's analysis. The trial court also found that the State had violated Hudson's and Christian's constitutional and statutory rights because it had acted in "bad faith" by failing to preserve "potentially useful evidence." The trial court justified its finding of bad faith by noting that while the prosecutor's failure to notify the defendants prior to the first round of tests "may
have been the result of ignorance, negligence, or poor judgment" (emphasis sic), his failure to notify the defendants before conducting a second round of tests "c[ould] not be attributed to inadvertence or oversight," but, instead, constituted a "deliberate disregard of his duty to seek justice," given the prosecutor's "knowledge of the requirements of R.C. 2925.51(E), the defendant's objections and concerns, and the impending evidentiary hearing." Accordingly, the trial court ordered that evidence of the State's scientific analysis of the substances taken from the implements seized from Hudson and Christian be suppressed.
Pursuant to Crim.R. 12(J), the State appeals from the trial court's order sustaining Hudson's suppression motion.
 II
The State's First and Second Assignments of Error state:
 I. THE TRIAL COURT ERRED IN FINDING THAT THE STATE WAS IN VIOLATION OF R.C. 2925.51(E).
 II. THE TRIAL COURT ERRED IN SUPPRESSING THE EVIDENCE BECAUSE DEFENDANT'S CONSTITUTIONAL RIGHTS WERE NOT VIOLATED.
The State argues that the trial court erred in finding that it had violated R.C. 2925.51(E) by failing to preserve a sufficient amount of the substance in question in order to permit Hudson's analyst to make a thorough scientific analysis of the substance, and by failing to notify Hudson that a sufficient sample portion could not be preserved, in order to provide Hudson with an opportunity to request that his analyst be present at any testing conducted by the State. The State argues, in the alternative, that the trial court erred in finding that the prosecutor acted in "bad faith" by failing to notify the defense prior to conducting a second round of tests on the substance, after Hudson's analyst had determined that there was an insufficient amount of the substance left to permit an independent analysis of it, and that, as a result of the prosecutor's actions, Hudson's constitutional, as well as statutory, rights had been violated.
Pursuant to R.C. 2925.51(E), any person who is accused of violating R.C. Chapters 2925 or 3719 is entitled, upon written request made to the prosecutor, to have a portion of the substance that is the basis of the alleged violation preserved for the benefit of independent analysis performed by his privately employed or court-appointed laboratory analyst. The portion preserved must be a representative sample of the entire substance in question, and must be of "sufficient size, in the opinion of the court, to permit the accused's analyst to make a thorough scientific analysis concerning the identity of the substance." R.C. 2925.51(E). If the prosecutor determines that a sufficient sample portion cannot be preserved and given to the accused's analyst, he must so inform the accused or his attorney. Id. In that event, the accused is entitled, upon written request made to the prosecutor, to have his analyst present at an analysis of the substance. Id.
Initially, the State argues that the trial court's finding that the prosecutor failed to provide a sufficient sample to Hudson's analyst to allow him to make a thorough scientific analysis concerning the identity of the substance is not supported by the evidence. We disagree.
The decision regarding whether the sample provided to the accused's laboratory analyst is of sufficient size to allow for a thorough scientific analysis of it is a factual determination, and in reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings if they are supported by competent, credible evidence. State v. Terry (Feb. 28, 1997), Montgomery App. No. 15796, unreported. Furthermore, R.C.2925.51(E) appears to confide the decision regarding whether the sample is of sufficient size to the discretion of the trial court, since the statute provides that the sample "shall be of sufficient size, in the opinion of the court, to permit the accused's analyst to make a thorough scientific analysis * * *." Id. (Emphasis added.)
Here, Hudson's independent analyst, Dehus, testified that he could not afford the type of GC/MS equipment used by the State to test for cocaine. Instead, Dehus used a testing protocol whereby he would perform two preliminary tests on the substance, followed by an IR test in order to confirm or dispel the presence of cocaine. Dehus testified that while he was able to obtain enough of the substance to conduct the preliminary tests by using a methanol rinse on the glass pipe, there was not enough of the substance present to perform an IR test. He stated that in order to perform an IR test, he needed a "visible amount" of the alleged controlled substance, weighing between "0.01 and 0.05 grams." Dehus testified that he observed no visible amount of residue on the glass pipe seized from Hudson. When he was asked why the State's expert was able to perform an IR test on the implements seized from Christian, the other defendant involved in the hearing, Dehus suggested that the Miami Valley Regional Crime Laboratory may have been "equipped with micro sampling devices" that might have permitted them to perform an IR test "on a quantity that [he] could not with [his] instrument."
The State's expert, Bowling, agreed that a visible amount of residue was needed in order to perform an IR test, but she testified that the amount did not have to be a "chunk," but, instead, could be merely a "film." Bowling testified that there was a visible amount of residue on the glass pipe, and stated that she could still see some of the residue "in the rubber section" of the implement seized from Hudson. Bowling acknowledged that she could not get a confirmatory result when she performed an IR test on the implements shortly before the suppression hearing.
The trial court never resolved the direct evidentiary conflict regarding whether there was a visible amount of residue on the implements seized from Hudson. Nevertheless, it is apparent that the trial court, at the very least, accepted Dehus's assertion that he did not have enough of the substance to perform an IR test, which could have confirmed or dispelled the presence of cocaine. Therefore, there is evidence in the record to support the trial court's finding that the State had breached its duty to preserve a sufficient amount of the substance forming the basis of the charge against Hudson. In our view, this finding did not constitute an abuse of discretion. The State should be aware of the various testing protocols that may be used by independent analysts like Dehus. Furthermore, the State is able to provide a margin of safety in its procedures for complying with the requirements of R.C. 2925.51(E), by requiring that the accused or his attorney be notified prior to the time it conducts testing in any residue case, so that the defense expert can examine the residue, and inform the State what amount, if any, will be needed for testing by the defense.
The State argues that if Dehus did not have enough of the substance to perform his own IR test, it was due to the fact that he consumed the substance by conducting three preliminary tests[1] on the substance before deciding that an insufficient amount of the substance remained to perform an IR test. The State asserts that Dehus testified that any one of the preliminary tests, when coupled with the IR test, could have confirmed or dispelled the presence of cocaine, and that, therefore, Dehus used three preliminary tests simply to consume the sample. However, Dehus did not testify that any one of the three preliminary tests mentioned above, coupled with the IR test, could confirm or dispel the presence of cocaine. Rather, Dehus testified that the IR test could not serve as a confirmatory test, standing alone, but, instead, "would require a combination of other tests." (Emphasis added.)
The State also points to Dehus's testimony that "many analytical techniques would involve two, three or four preliminary tests, and the combined results of them would be confirmatory." However, the State is taking this sentence out of context. Dehus apparently was not speaking of his own methodology, but of the methodology of others. Furthermore, one of the State's experts, Wathen, testified that preliminary tests merely indicate, rather than confirm, the presence of cocaine.
The State argues that even if it failed to provide Hudson's analyst with a sufficient sample of the substance forming the basis of the charge against him, it did not violate Hudson's statutory right to notification, since the prosecutor reasonably believed that a sufficient amount of the substance existed to allow Hudson's analyst to make a thorough scientific analysis of it.
R.C. 2925.51(E) provides that if the prosecutor determines that a sample portion of the substance forming the basis of the charge against the accused cannot be preserved, then he must notify the accused or his attorney of this fact. In that circumstance, the accused is entitled, upon written request to the prosecutor, to have his analyst present at the State's analysis of the substance. Id. Under the plain terms of the statute, the prosecutor's duty to notify the accused or his attorney is only triggered where the prosecutor determines that an adequate sample portion cannot be preserved and given to the accused's analyst. Where the prosecutor determines that a sample portion of the substance can be preserved and given to the accused's analyst, then the duty to notify the accused or his attorney ceases to become a material issue in the case. Instead, the remaining issue, at least in terms of whether the statute has been violated, is whether the sample portion of the substance that was turned over to the accused's analyst was "of sufficient size, in the opinion of the court, to permit the accused's analyst to make a thorough scientific analysis concerning the identity of the substance."
Here the prosecutor determined that a sample portion of the substance could be preserved, and, therefore, did not notify Hudson otherwise. Hudson's analyst, Dehus, was provided with the portion of the substance remaining after the State had conducted its initial round of testing on the substance. Dehus determined that there was an insufficient amount of the substance remaining for a thorough scientific analysis. At that point, the only issue before the trial court was whether the portion provided to Hudson's analyst was "of sufficient size to permit Hudson's analyst to make a thorough scientific analysis" of the substance. The trial court determined that the sample provided to Hudson's analyst was, in fact, insufficient to allow him to make an independent analysis, and we have found that there is sufficient evidence in the record to support that determination. The trial court's analysis of whether the State violated R.C. 2925.51(E) should have ended there. However, the trial court proceeded to find that the prosecutor violated R.C. 2925.51(E) by failing to notify Hudson prior to both the first and second round of testing on the substance performed by the State's experts.
We find no reversible error regarding the trial court's finding that the prosecutor violated R.C. 2925.51(E) by not notifying the defense prior to conducting its first round of tests on the substance. Because there is evidence to support the trial court's finding that the State failed to preserve an adequate amount of the substance for independent analysis, it follows, then, that the prosecutor should, indeed, have notified Hudson that a sample could not be preserved prior to the first round oftests that the State performed on the substance. However, in our view, contrary to holding of the trial court, the State was not required, pursuant to R.C. 2925.51(E), to notify Hudson that it intended to perform further tests on the substance, where Hudson's independent analyst, Dehus, examined the substance, and determined that there was an insufficient amount available to allow for an independent analysis. No provision in R.C. 2925.51(E) required the prosecutor to inform Hudson or his counsel of the State's intention to submit the substance to further testing in order to confirm or contradict Dehus's findings.
Moreover, the trial court's erroneous finding that the State was obligated to notify the defense prior to performing its second round of tests on the substance played a pivotal role in its decision, because the trial court used the State's failure to notify the defense, prior to its second round of tests, as its basis for finding that the State's violation of R.C. 2925.51(E) rose to the level of a constitutional violation, requiring suppression of the State's scientific analysis of the substance's identity.
As the trial court correctly observed, the fact that the State violated Hudson's statutory rights pursuant to R.C.2925.51(E) provides an insufficient basis, standing alone, to suppress the State's evidence. The general rule in Ohio is that the exclusionary rule is not to be applied to statutory violations that fall short of constitutional violations, absent a legislative mandate requiring application of the exclusionary rule. State v.Myers (1971), 26 Ohio St.2d 190, 196, Kettering v. Hollen (1980),64 Ohio St.2d 232, 234-235. Because R.C. 2925.51(E) does not provide a sanction for the state's failure to furnish an accused with a sample sufficient for independent analysis, Hudson had to establish a violation of his constitutional rights in order to have the State's evidence against him suppressed. State v. Jarvis
(Feb. 13, 1998), Montgomery App. No. 16388, unreported.
Where the state fails to disclose material exculpatory evidence to a criminal defendant, it violates the Due Process Clause of the Fourteenth Amendment, irrespective of whether the state has acted in good faith or in bad faith. Brady v. Maryland
(1963), 373 U.S. 83, Arizona v. Youngblood (1988), 488 U.S. 51,57. This rule applies in cases where the evidence possesses "an exculpatory value that was apparent before it was destroyed."California v. Trombetta (1984), 467 U.S. 479. However, where the state fails to preserve evidence that is only "potentially useful," i.e., "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant[,]" the state's failure will amount to a denial of due process only where the defendant can show that the state acted in "bad faith" in failing to preserve the potentially useful evidence. Arizona v. Youngblood
(1988), 488 U.S. 51, 57-58.
Because all sides agree that the evidence in question was only "potentially useful," Hudson was obligated to demonstrate that the State acted in bad faith in failing to preserve a sufficient amount of the substance to allow for independent testing, or to notify the defense that an adequate amount of the substance could not be preserved and given to their analyst. "The term `bad faith' generally implies something more than bad judgment or negligence. `It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces the actual intent to mislead or deceive another.'" State v. Buhrman (Sept. 12, 1997), Greene App. No. 96 CA 145, unreported (citations omitted). Bad faith occurs in situations where the state's agents, "by their conduct[,] indicate that the evidence could form a basis for exonerating the defendant." Youngblood, supra, at 58.
Here, the trial court found that while the prosecutor's failure to notify Hudson or his counsel prior to conducting its first round of tests on the substance in question may have been the result of "ignorance, negligence, or poor judgment," his failure to notify the defense prior to having the State's experts conduct a second round of tests demonstrated a "deliberate disregard of his duty to seek justice," and, thus, amounted to bad faith. However, for the reasons stated above, the prosecutor was not obligated, pursuant to R.C. 2925.51(E), to notify the defense of his decision to conduct further testing of the substance, after learning that Hudson's analyst had examined the substance and determined that there was an insufficient amount to conduct an independent analysis of it. Accordingly, the trial court erred by basing its bad faith determination on the State's failure to notify the defense prior to the State's second round of tests on the substance in question.
By finding that "the prosecutor's failure to notify the defendants of the first tests may have been the result of ignorance, negligence, or poor judgment[,]" the trial court suggests that, in its opinion, the prosecutor's failure to notify the defense prior to the time it conducted its first round of tests on the substance might not have been the result of ignorance, negligence, or poor judgment, but instead, might have constituted bad faith. The trial court believed it was unnecessary to decide that issue given its determination that the State had a duty to notify the defense prior to conducting a second round of tests on the substance. This court has found that determination to be erroneous. Because the question of whether the State acted in bad faith is a mixed question of law and fact, the proper course of action for us is to remand this matter to the trial court for a determination of whether the State did, in fact, act in bad faith by failing either to preserve a sufficient amount of the substance or to notify the defense prior to conducting itsinitial tests on the substance.
Hudson may complain that even in the absence of a finding that the State has violated R.C. 2925.51(E) in bad faith, he will be deprived of his due process right to a fair trial if, because of the disparity in the resources available to himself and to the State, respectively, the State's expert is able to perform a meaningful test upon the substance, but his expert is not able to do so. That may be so. However, that is not within the scope of this appeal, which is from a suppression order entered pursuant to the statute, and the trial court's finding of bad faith on the part of the prosecutor. A defendant's due process right to a fair trial might require a trial court, in the exercise of its discretion, to provide relief that will level the playing field, at least to some extent, in the situation described, but the defendant must apply for the relief, which will be fact-sensitive. Possible relief might include an order that any further testing by the State be performed in the presence of the defendant's expert, that the State shall perform further testing in the presence of the defendant's expert, or even that the defendant's expert shall be permitted to use the State's equipment to perform a test. Defense counsel, the trial court, or both, may think of other forms of relief that would tend to level the playing field in a case like this one. The availability of relief of the kind described need not concern us in this appeal, since this appeal is taken from an order suppressing evidence pursuant to R.C.2925.51(E), not from an order granting or denying relief requested pursuant to the defendant's due process right to a fair trial.
At the suppression hearing, one of the State's forensic chemists testified that the Miami Valley Regional Crime Laboratory had recently instituted a written policy governing residue cases. The last sentence of the policy reads, "[i]f * * * the chemist feels that there is not a sufficient amount of material for independent analysis, he/she will inform the case officer [e.g.
the investigating police officer] and await his decision to go forward or wait for a defense expert to be present." We encourage the State, in all future residue cases, to notify the accused or his attorney that the substance that is the basis of the alleged violation might be consumed during the State's testing of it, and to offer the accused an opportunity to be present when the State analyzes the substance. By doing so, the State will be able to forestall future controversies like the one in the case before us.
In light of the foregoing, the State's First and Second Assignments of Error are sustained to the extent indicated.
 III
The State's First and Second Assignments of Error having been sustained to the extent indicated, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
BROGAN and WOLFF, JJ., concur.
Copies mailed to:
Kirsten A. Davies
John P. Hilgeman
Hon. Mary Donovan
[1] In his affidavit, Dehus averred that he performed field testing on the substance, as well as thin-layer Chromatography and Ultraviolet Spectroscopy.