OPINION
Plaintiff-appellant the State of Ohio appeals from an order suppressing evidence at the request of defendant-appellee Gerald (a.k.a. Jerald) Christian.[1] The State argues that the trial court erred in finding that it had violated R.C. 2925.51(E) by: (1) failing to preserve a sufficient sample of the substance that formed the basis of a Possession of Crack Cocaine charge against Christian, in order to allow Christian's independent laboratory analyst to conduct a thorough scientific analysis of the substance to determine its identity; and (2) failing to notify Christian or his attorney that a sufficient sample could not be preserved and given to Christian's analyst, in order to provide Christian with the opportunity to have his analyst present at the State's analysis of the substance. The State argues, in the alternative, that the trial court erred in finding that the prosecutor had acted in "bad faith" in failing to notify the defense prior to conducting a second round of tests on the substance, after Christian's analyst had determined that there was an insufficient amount of the substance to permit an independent analysis of it, and that, as a result, Christian's constitutional, as well as statutory, rights had been violated.
We conclude that there is sufficient evidence in the record to support the trial court's finding that the State violated R.C.2925.51(E) by failing to preserve a sufficient amount of the substance that forms the basis of the charge against Christian, to allow for an independent analysis of the substance. However, we conclude that the trial court erred in finding that the State violated R.C. 2925.51(E) by failing to notify the defense prior to conducting a second round of tests on the substance, after Christian's analyst had determined that there was an insufficient amount of the substance available to allow for an independent analysis of it, because R.C. 2925.51(E) does not require the prosecutor to inform the defense of his plans to conduct further testing of the substance in that circumstance. Therefore, the trial court erred by predicating its finding of bad faith on that failure. Accordingly, the judgment of the trial court isReversed, and this cause is Remanded for proceedings consistent with this opinion.
 I
On November 9, 1999, Dayton police seized a glass tube, with a piece of rubber and a metal rod from Christian. The evidence seized from Christian was sent to the Miami Valley Regional Crime Laboratory, where it was analyzed by Michael Wathen, a forensic chemist and the laboratory supervisor. Wathen performed a gas chromatography/mass spectrometry ("GC/MS") test on the evidence, which revealed the presence of cocaine. Christian was indicted on one count of Possession of Crack Cocaine.
The trial court appointed Larry Dehus, a forensic chemist, to conduct an independent analysis of the substance on Christian's behalf. Dehus performed two preliminary tests (thin-layer Chromatography and Ultraviolet Spectroscopy) on the substance, which indicated the presence of cocaine. However, Dehus determined that there was an insufficient amount of the substance available to perform an IR test, which could have confirmed the presence of cocaine.
As a result of Dehus's findings, Christian moved to suppress the State's evidence against him or to dismiss the case entirely, asserting that the State had deprived him of his constitutional rights to confront the evidence against him, due process, and a fair trial, because it had failed to preserve a sufficient sample of the substance alleged to be crack cocaine to allow for an independent analysis of it, or to notify the defense so that it could request that an independent analyst be present when the State tested the substance, as required, pursuant to R.C.2925.51(E).
Christian's Motion to Dismiss or Suppress was consolidated with that of a similarly-situated defendant, Robert Hudson. In an apparently unrelated incident, Hudson was a passenger in an automobile that was stopped by officers from the Dayton Police Department, on November 15, 1998. The officers subsequently conducted a pat-down search of Hudson, discovering a small glass pipe, with a piece of rubber and a metal rod. The evidence seized from Hudson was sent to the Miami Valley Regional Crime Laboratory, where it was analyzed by forensic chemist Julie Bowling. Bowling first ran a preliminary test on the substance, which indicated the presence of cocaine, and then a GC/MS test, which confirmed it. Hudson was subsequently indicted on one count of Possession of Crack Cocaine. The trial court again appointed Larry Dehus to conduct an independent analysis of the contents of the pipe on Hudson's behalf. Dehus conducted at least two preliminary tests on the substance, which indicated the presence of cocaine. However, Dehus did not perform an infrared spectroscopy ("IR") test in order to confirm the presence of cocaine, because, again, he concluded that he lacked a sufficient quantity of the substance to do so. As a result of Dehus's findings, Hudson moved to suppress the State's evidence against him or to dismiss the case against him in its entirety.
Approximately one week before the scheduled hearing on the consolidated motions, the prosecutor asked Wathen and Bowling to perform further tests on the evidence seized from Christian and Hudson. Bowling first performed an IR test on the evidence seized from Hudson, but she "got a poor spectrum for cocaine that really was not clean enough to call." She then performed a second GC/MS test, which, again, confirmed the presence of cocaine. Wathen performed both an IR and GC/MS test on the evidence seized from Christian. Both tests confirmed the presence of cocaine. Neither Christian, Hudson, nor Dehus were notified prior to this second round of testing.
After holding a suppression hearing, at which, Bowling, Wathen, and Dehus testified, the trial court issued a Decision, Order and Entry Sustaining Defendants' Motions to Suppress/and to Dismiss. The trial court found that the State had violated R.C.2925.51(E) by failing to preserve a sufficient amount of the substance to permit Christian's analyst to conduct an independent analysis of it, and by failing to notify Christian or his attorney prior to conducting any scientific analysis on the substance so that they could request that their independent analyst be present at the analysis. The trial court also found that the State had violated Christian's and Hudson's constitutional, as well as their statutory, rights because it had acted in "bad faith" by failing to preserve "potentially useful evidence." The trial court justified its finding of bad faith by noting that while the prosecutor's failure to notify the defendants prior to the first round of tests "may have been the result of ignorance, negligence, or poor judgment" (emphasis sic), his failure to notify them before conducting a second round of tests "c[ould] not be attributed to inadvertence or oversight," but, instead, constituted a "deliberate disregard of his duty to seek justice," given the prosecutor's "knowledge of the requirements of R.C.2925.51(E), the defendant's objections and concerns, and the impending evidentiary hearing." Accordingly, the trial court ordered that evidence of the State's scientific analysis of the substances taken from the implements seized from Christian and Hudson be suppressed.
Pursuant to Crim.R. 12(J), the State appeals from the trial court's order sustaining Christian's suppression motion.
 II
The State's First and Second Assignments of Error state:
 I. THE TRIAL COURT ERRED IN FINDING THAT THE STATE WAS IN VIOLATION OF R.C. 2925.51(E).
 II. THE TRIAL COURT ERRED IN SUPPRESSING THE EVIDENCE BECAUSE DEFENDANT'S CONSTITUTIONAL RIGHTS WERE NOT VIOLATED.
The State argues that the trial court erred in finding that it had violated R.C. 2925.51(E) by failing to preserve a sufficient amount of the substance in question to allow Christian's analyst to make a thorough scientific analysis of the substance, or by failing to notify Christian that such a sample portion could not be preserved in order to give him an opportunity to request that his analyst be present at any testing conducted by the State. The State argues, in the alternative, that the trial court erred in finding that the prosecutor acted in "bad faith" by failing to notify the defense prior to conducting a second round of tests on the substance, after Christian's analyst had determined that there was an insufficient amount of the substance left to permit an independent analysis of it, and that, as a result of the prosecutor's actions, Christian's constitutional, as well as statutory, rights had been violated.
Pursuant to R.C. 2925.51(E), any person who is accused of violating R.C. Chapters 2925 or 3719 is entitled, upon written request made to the prosecutor, to have a portion of the substance that is the basis of the alleged violation preserved for the benefit of independent analysis performed by his privately employed or court-appointed laboratory analyst. The portion preserved must be a representative sample of the entire substance in question, and must be of "sufficient size, in the opinion of the court, to permit the accused's analyst to make a thorough scientific analysis concerning the identity of the substance." R.C. 2925.51(E). If the prosecutor determines that such a sample portion cannot be preserved and given to the accused's analyst, he must so inform the accused or his attorney. Id. In such a circumstance, the accused is entitled, upon written request made to the prosecutor, to have his analyst present at an analysis of the substance that is the basis of the alleged violation. Id.
Initially, the State argues that the trial court's finding that the prosecutor failed to provide a sufficient sample to Christian's analyst to allow him to make a thorough scientific analysis concerning the identity of the substance is not supported by the evidence. We disagree.
The decision regarding whether the sample provided to the accused's laboratory analyst is of sufficient size to allow for a thorough scientific analysis of it is a factual determination, and in reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings if they are supported by competent, credible evidence. State v. Terry (Feb. 28, 1997), Montgomery App. No. 15796, unreported. Furthermore, R.C.2925.51(E) appears to leave the decision regarding whether the sample is of sufficient size to the discretion of the trial court, since the statute provides that the sample "shall be of sufficient size, in the opinion of the court, to permit the accused's analyst to make a thorough scientific analysis * * *." Id. (Emphasis added.)
Here, Christian's independent analyst, Dehus, testified that he could not afford the type of GC/MS equipment used by the State to test for cocaine. Instead, Dehus used a testing protocol whereby he would perform two preliminary tests on the substance, followed by an IR test in order to confirm or dispel the presence of cocaine. Dehus testified that while he was able to obtain enough of the substance to conduct the preliminary tests by using a methanol rinse on the glass pipe, there was not enough of the substance "to even begin to think about doing [an IR] test." He stated that in order to perform an IR test, he needed a "visible amount" of the alleged controlled substance, weighing between "0.01 and 0.05 grams." Dehus testified that he observed no visible amount of residue on the glass tube seized from Christian. When he was asked why the State's expert was able to perform an IR test on the implements seized from Christian, Dehus suggested that the Miami Valley Regional Crime Laboratory may have been "equipped with micro sampling devices" that might have permitted them to perform an IR test "on a quantity that [he] could not with [his] instrument." The State's expert, Wathen, testified that there was a visible amount of residue on the glass tube, and that he could still see some of the residue on the implements seized from Christian.
While the trial court never resolved the direct evidentiary conflict regarding whether there was a visible amount of residue on the implements seized from Christian, it is apparent that the trial court, at the very least, accepted Dehus's assertion that he did not have enough of the substance to perform an IR test. Therefore, there is evidence in the record to support the trial court's finding that the State had breached its duty to preserve a sufficient amount of the substance forming the basis of the charge against Christian. In our view, the trial court's finding did not constitute an abuse of discretion, either. The State should be aware of the various testing protocols that may be used by independent analysts like Dehus. Furthermore, the State is able to provide a margin of safety in its procedures for complying with the requirements of R.C. 2925.51(E), by requiring that the accused or his attorney be notified prior to the time it conducts testing in any residue case, so that the defense expert can examine the residue, and inform the State what amounts, if any, will be needed for testing by the defense.
The State argues that if Dehus did not have enough of the substance to perform his own IR test, it was due to the fact that he consumed the substance by conducting three preliminary tests on the substance before deciding that an insufficient amount of the substance remained to perform an IR test. The State asserts that Dehus testified that one preliminary test, when coupled with an IR test, could have confirmed or dispelled the presence of cocaine, and that, therefore, Dehus used more than one preliminary test simply to consume the sample.
However, it appears that Dehus only conducted two preliminary tests on the substance, not three. Furthermore, Dehus did not testify that one preliminary test, when coupled with an IR test, could confirm or dispel the presence of cocaine. Rather, Dehus testified that the IR test could not serve as a confirmatory test, standing alone, but, instead, "would require a combination of other tests." (Emphasis added.) Additionally, Dehus testified that there was never enough of the substance "from the start" to do an IR test.
The State also points to Dehus's testimony that "many analytical techniques would involve two, three or four preliminary tests, and the combined results of them would be confirmatory." However, the State is taking this sentence out of context. Dehus apparently was not speaking of his own methodology, but that of others. Furthermore, the State's own expert, Wathen, testified that preliminary tests cannot confirm the presence of cocaine, but only indicate what the substance may be.
The State argues that even if it failed to provide Christian's analyst with a sufficient sample of the substance that forms the basis of the charge against him, it did not violate Christian's statutory right to notification, since the prosecutor reasonably believed that a sufficient amount of the substance did exist to allow Christian's analyst to make a thorough scientific analysis of it.
R.C. 2925.51(E) provides that if the prosecutor determines that a sample portion of the substance which forms the basis of the charge against the accused cannot be preserved, then he must notify the accused or his attorney of this fact. In that circumstance, the accused is entitled, upon written request to the prosecutor, to have his analyst present at the State's analysis of the substance. Id. Under the plain terms of the statute, the prosecutor's duty to notify the accused or his attorney is only triggered where the prosecutor determines that an adequate sample portion cannot be preserved and given to the accused's analyst. Where the prosecutor determines that a sample portion of the substance can be preserved and given to the accused's analyst, then the duty to notify the accused or his attorney ceases to become a material issue in the case. Instead, the remaining issue, at least in terms of whether the statute has been violated, is whether the sample portion of the substance that was turned over to the accused's analyst was "of sufficient size, in the opinion of the court, to permit the accused's analyst to make a thorough scientific analysis concerning the identity of the substance."
Here the prosecutor determined that a sample portion of the substance could be preserved, and, therefore, did not notify Christian otherwise. Christian's analyst, Dehus, was provided with the portion of the substance that remained after the State had conducted its initial round of testing on the substance. Dehus determined that there was an insufficient amount of the substance remaining for a thorough scientific analysis. At that point, the only issue before the trial court was whether the portion provided to Christian's analyst was "of sufficient size to permit Christian's analyst to make a thorough scientific analysis" of the substance. The trial court determined that the sample provided to Christian's analyst was, in fact, insufficient to allow him to make an independent analysis, and we have found that there is sufficient evidence in the record to support that determination. The trial court's analysis of whether the State violated R.C. 2925.51(E) should have ended there. However, the trial court proceeded to find that the prosecutor violated R.C.2925.51(E) by failing to notify Christian prior to both the first and second round of tests on the substance performed by the State.
We find no reversible error regarding the trial court's finding that the prosecutor violated R.C. 2925.51(E) by not notifying the defense prior to conducting its first round of tests on the substance. Because there is evidence to support the trial court's finding that the State failed to preserve a sufficient amount of the substance for independent analysis, it follows, then, that the prosecutor should, indeed, have notified Christian that a sample could not be preserved prior to the first round oftests that the State performed on the substance.
However, contrary to what the trial court held, the State was not required, pursuant to R.C. 2925.51(E), to notify Christian that it intended to perform further tests on the substance, where Christian's independent analyst, Dehus, examined the substance, and determined that there was an insufficient amount available to allow for an independent analysis of the substance. No provision in R.C. 2925.51(E) required the prosecutor to inform Christian or his counsel of the State's intentions to submit the substance to further testing in order to confirm or dispel Dehus's findings.
The trial court's erroneous finding that the State was obligated to notify the defense prior to performing its second round of tests on the substance played a pivotal role in its decision, because the trial court used the State's failure to notify the defense prior to conducting a second round of tests on the substance, as its basis for finding that the State's violation of R.C. 2925.51(E) rose to the level of a constitutional violation, requiring suppression of the State's scientific analysis of the substance's identity.
As the trial court correctly observed, the fact that the State violated Christian's statutory right pursuant to R.C.2925.51(E) provides an insufficient basis, standing alone, to suppress the State's evidence. The general rule in this state is that the exclusionary rule is not to be applied to statutory violations that fall short of constitutional violations, absent a legislative mandate requiring application of the exclusionary rule. State v. Myers (1971), 26 Ohio St.2d 190, 196, Kettering v.Hollen (1980), 64 Ohio St.2d 232, 234-235. Because R.C.2925.51(E) does not provide a sanction for the state's failure to furnish the accused with a sample that is suitable for independent analysis, Christian had to establish a violation of his constitutional rights in order to have the State's evidence against him suppressed. State v. Jarvis (Feb. 13, 1998), Montgomery App. No. 16388, unreported.
Where the state fails to disclose material exculpatory evidence to a criminal defendant, it violates the Due Process Clause of the Fourteenth Amendment, irrespective of whether the State acted in good or bad faith. Brady v. Maryland (1963),373 U.S. 83, Arizona v. Youngblood (1988), 488 U.S. 51, 57. This rule applies in cases where the evidence possesses "an exculpatory value that was apparent before it was destroyed." California v.Trombetta (1984), 467 U.S. 479. However, where the state fails to preserve evidence that is only "potentially useful," i.e.,
"evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant[,]" the state's failure will amount to a denial of due process only where the defendant can show that the state acted in "bad faith" in failing to preserve the potentially useful evidence. Arizona v. Youngblood (1988),488 U.S. 51, 57-58.
Because all sides agree that the evidence in question was only "potentially useful," Christian was obligated to demonstrate that the State acted in bad faith in failing to preserve an adequate sample of the substance to allow for independent testing, or in failing to notify the defense prior to conducting its initial testing of the substance. "The term `bad faith' generally implies something more than bad judgment or negligence. `It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or will partaking of the nature of fraud. It also embraces the actual intent to mislead or deceive another.'" State v. Buhrman
(Sept. 12, 1997), Greene App. No. 96 CA 145, unreported (citations omitted). Bad faith occurs in situations where the state's agents, "by their conduct[,] indicate that the evidence could form a basis for exonerating the defendant." Youngblood, supra, at 58.
Here, the trial court found that while the prosecutor's failure to notify Christian or his counsel prior to conducting its first round of tests on the substance in question may have been the result of "ignorance, negligence, or poor judgment," his failure to notify the defense prior to having the State's experts conduct a second round of tests demonstrated a "deliberate disregard of his duty to seek justice," and, thus, amounted to bad faith. However, for the reasons stated above, the prosecutor was not obligated pursuant to R.C. 2925.51(E) to notify the defense of his decision to conduct further tests on the substance, after learning that Christian's analyst had examined the substance and determined that there was an insufficient amount to conduct a thorough scientific analysis of it. Accordingly, the trial court erred by basing its bad faith determination on the State's failure to notify the defense prior to the State's second round of tests on the substance in question.
By finding that "the prosecutor's failure to notify the defendants of the first tests may have been the result of ignorance, negligence, or poor judgment[,]" the trial court signaled that, in its opinion, the prosecutor's failure to notify the defense prior to the time it conducting its first round of tests on the substance may not have been the result of ignorance, negligence, or poor judgment, but instead, may have constituted bad faith, itself. The trial court believed it was unnecessary to decide that issue given its determination that the State had a duty to notify the defense prior to conducting a second round of tests on the substance. This court has found that determination to be erroneous. Because the question of whether the State has acted in bad faith is a mixed question of law and fact, the proper course of action for us is to remand this matter to the trial court for a determination of whether the State did, in fact, act in bad faith by failing to preserve a sufficient amount of the substance, or by failing to notify the defense prior to conducting its initial tests on the substance.
At the suppression hearing, one of the State's forensic chemists testified that the Miami Valley Regional Crime Laboratory had recently instituted a written policy governing residue cases. The last sentence of the policy reads, "[i]f * * * the chemist feels that there is not a sufficient amount of material for independent analysis, he/she will inform the case officer [e.g.
the investigating police officer] and await his decision to go forward or wait for a defense expert to be present." We encourage the State, in all future residue cases, to notify the accused or his attorney that the substance that is the basis of the alleged violation might be consumed during the State's testing of it, and to offer the accused an opportunity to be present when the State analyzes the substance. By doing so, the State, hopefully, will forestall future controversies like the one in the case subjudice.
In light of the foregoing, the State's First and Second Assignments of Error are sustained to the extent indicated.[2]
 III
The State's First and Second Assignments of Error having been sustained to the extent indicated, the judgment of the trial court is Reversed, and this cause is Remanded to the trial court for further proceedings consistent with this opinion.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Kirsten A. Davies
Jess M. Smith, III
Hon. Mary Donovan
[1] The format of Christian's answer brief is in violation of App.R. 19(A), which requires that "[a]ll printed matter must appear in at least a twelve point type * * *." The printed matter in Christian's brief is considerably smaller than the rule allows. It appears that the smaller print is being used to circumvent the twenty-five page limit set forth in Loc.R. 2.2(A) of the Second Appellate District. Christian's counsel is hereby advised that any brief he submits in the future that fails to comply with Loc.R. 2.2 of the Second Appellate District, App.R. 16, or App.R. 19, will be returned to him for reformation. See Loc.R. 2.2(B) of the Second Appellate District.
[2] The trial court noted in its decision that Wathen testified that he first tested the implements seized from Christian on November 9, 1998; however, the report he made regarding the test results was dated October 29, 1998. The trial court also noted that the prosecutor did not explain this discrepancy, or even notice it. Given its holding, the trial court did not comment further on this discrepancy. Having reviewed the relevant portions of the trial transcript, we conclude that the error is insignificant. It is clear from Wathen's testimony that the report dated October 29, 1998, pertains to the testing that Wathen performed on November 9, 1998, concerning the evidence seized from Christian. It is apparent that the report was simply dated wrong. While the prosecutor appears not to have noticed the incorrect date, it is apparent Wathen did. In fact, when he was asked what the date of the report was, Wathen answered, "This is dated — it's dated October 29th, 1998."