JOURNAL ENTRY AND OPINION
Defendant-appellant Felicia Ross (appellant) appeals from her convictions for fraud and passing bad checks pursuant to R.C. 2913.02 and2913.11, respectively, entered upon the jury verdict in Cuyahoga County Court of Common Pleas. Appellant complains that the trial court committed reversible error in its instruction to the jury and that her convictions were against the manifest weight of the evidence. We find no reversible error in the trial court proceedings and we affirm.
The record reveals the following facts giving rise to this appeal. On March 1, 1999, the Cuyahoga County Grand Jury returned a two-count indictment against appellant charging her, to-wit: in count one, with passing a bad check, check number 2124, dated May 4, 1998 in the amount of $1066.83, payable to Paul's Auto Service, drawn on appellant's account; and in count two, with theft of more than $500 but less than $5,000 in goods or services from the owner of Paul's Auto Service. At her arraignment, appellant entered a plea of not guilty to both charges. Jury trial commenced August 18, 1999. At trial, the state presented three witnesses.
First, Paul Vaccarina owner of Paul's Auto Service in Oakwood Village testified that previously he performed automobile work for appellant. Specifically, in March or April of 1998, he overhauled the engine of appellant's Mercury Sable at a cost of over $1,000 including parts, tax and labor. He prepared a repair bill and called appellant to notify her that the car was ready. Appellant paid by check which he deposited into the bank, but the check was returned as being dishonored for insufficient funds. He called both the bank and appellant in an attempt to straighten the matter out. He testified that although appellant assured him that she would save money to pay him, she failed to bring any money to him.
Then, on October 11, 1998, he sent a letter to appellant verifying the debt owed to him noting that despite efforts to collect the debt he had not received payment. Subsequently, when he attempted to call appellant and determined her phone had been disconnected, he contacted the Oakwood police department and he reported the incident to Detective Wozniak. He said that Det. Wozniak then spoke with appellant. Vaccarina conceded that he would have allowed appellant to post-date her check and take the car. Previously, appellant had her car repaired at Paul's and had paid by check which had been returned to Paul's for insufficient funds; however, appellant had ultimately paid the amount owed. Vaccarina requested that Det. Wozniak give appellant a chance to remedy the situation, but this time appellant failed to pay the amount owed. By letter from the Bankruptcy Court date November 18, 1998, he became aware he was creditor in the matter.
Next, Andrew Scott Baker, an assistant National City Bank vice-president, testified as to the activity indicated on the statement of the checking account held in the names of Frederick D. Ross and Felicia L. Ross opened September 16, 1988 and closed December 21, 1998. Mr. Baker noted the monthly transactions and balances as shown in the bank records from December 1997 to December 21, 1998. On that date, the Loss Prevention Department, which monitors all overdrawn accounts, wrote off appellant's $100.18 account deficit as a credit memo in order to bring the account to a zero balance to close the account. The records demonstrated that from the date that check no. 2124 was first dishonored until appellant's account was closed by the bank, at no time were adequate funds in the account to cover the check. He noted that the highest balance in appellant's account was on July 3rd with $255.20 in the account.
Finally, Detective Robert Wozniak, an eight-year veteran of the Oakwood Village Police Department, testified that on September 30, 1998, Paul Vaccarina reported appellant's dishonored $1,066.83 check to him. He went to appellant's residence the same day and he requested that she contact Mr. Vaccarina to work out the matter. At the time, appellant agreed to do so. That day he explained to Mr. Vaccarina that he had made contact, appellant agreed to try to make restitution and it would not be necessary to pursue prosecution. Subsequently, on October 9, Det. Wozniak determined that appellant had failed to contact Mr. Vaccarina to make restitution and within a week a complaint was sent to the Grand Jury.
The state rested its case and defense counsel entered a motion for acquittal of the charges pursuant to Crim.R. 29 which was denied by the court.
In her defense, appellant testified on her own behalf. Appellant said she had dealt with Paul Vaccarina for car repair many times over twenty years. She took her 1991 Mercury Sable to Paul's Auto Repair in the beginning of March 1998 because it needed a rebuilt engine. A few weeks later, after the work was completed, she picked up her car and paid Paul with check no. 2124 in the amount of $1,066.83, which she post-dated to May 4, 1998 with Paul's approval. She said Paul allowed her to take her car and approved of the post-dated check because he knew her finances were low. Appellant testified that she and her husband filed for Chapter 13 bankruptcy in May 1995 but Paul Vaccarina would not have been aware of that fact. Her car was in good working order until the next week when the transmission gave out. In 1998, both she and her husband were working and drawing regular paychecks but, although she made deposits, the money was never in the checking account because her husband who had a drug problem made plenty of withdrawals.
Appellant stated that due to her car's transmission problems she took it to General Transmission for an estimate for a rebuilt transmission. She had the transmission work done at General Transmission; however, because they would not accept payments nor release her car until she paid the bill, appellant testified that she paid $1,070 in cash for the repairs. Since she only had $1,000 in cash, not enough to cover the General Transmission bill and the check to Paul's, she chose to pay General Transmission in order to get her car so she could get to work. She requested a copy of the invoice for her insurance company due to the car having been stolen in May. Ultimately, she lost her job because she missed work after her car was stolen.
Appellant testified that she offered to make payments on her debt to Paul but she said he refused and requested that she pay her bill all at once. In November 1998, her attorney filed another Chapter 13 bankruptcy with twenty-three creditors listed.
Appellant said because she and her husband had no other way to get the money for Paul they listed him as one of two priority creditors on the bankruptcy. Appellant said she had no intention to defraud Paul Vaccarina or to receive his services without paying. Appellant stated that to the best of her knowledge Paul is still one of her creditors in the bankruptcy.
On cross-examination, appellant conceded that in early May 1998 she had to make a decision as to whether to pay General Transmission or to put the $1,000 into the bank to cover Paul's post-dated check for May 4. She admitted that even though it would have saved her a $25 bank charge, she did not ask Paul not to cash the check and she knew Paul would try to cash the check. Appellant admitted that she waited until Paul called her and only then did she offer to make payments to him. Appellant conceded that she never offered him cash but said it was because he told her that he wanted her to pay the bill all at once. She admitted that she received Paul's October 11 letter which verified her unpaid debt to him.
On redirect examination, appellant complained that when she was required to pay $1,000 for the transmission work she was between two stones. She said if she gave Paul the money she owed him, she would be unable to get her car from General Transmission and unable to go to work. However, she said that she lost her car and she lost her job anyway.
The defense rested and renewed its motion for acquittal pursuant to Crim.R. 29, which was denied by the court. The jury was instructed and after deliberations returned verdicts of guilt on both counts as charged in the indictment. On September 14, 1999, appellant was sentenced to serve two years of community control sanctions which require her to obtain and keep full-time employment, remain drug free, pay restitution to Paul's and pay court costs. Appellant timely appeals her convictions and advances two assignments of error for our review.
 I. THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY THAT THE STATUTORY PRESUMPTION REGARDING PURPOSE TO DEFRAUD WAS REBUTTABLE.
 II. THE JURY'S DECISION FINDING THE DEFENDANT GUILTY OF PASSING BAD CHECKS AND THEFT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In her first assignment of error, appellant complains that the trial court committed reversible error in its failure to instruct the jury that the statutory presumption of knowledge of dishonor was rebuttable. Specifically, appellant contends that the jury instruction as given by the court encompassed the presumption language set forth in the statute and, therefore, required the additional instruction to the jury advising them that the statutory presumption could be rebutted by appellant who testified and produced other evidence at trial. Upon review of the instruction given to the jury in their entirety, we find no plain error requiring reversal of appellant's conviction.
Crim.R. 30 governs instructions to the jury and the type of record necessary to preserve an error for review by this court. Relevant to appellant's assigned error is subsection (A), which provides, in part:
 On appeal, a party may not assign as error the giving * * * [of] any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.
Moreover, jury instructions must be viewed in their totality. Margroff v. Cornwell Quality Tools, Inc. (1991), 81 Ohio App.3d 174, 177; Yeager v. Riverside Methodist Hosp. (1985), 24 Ohio App.3d 54, 55. If the totality of the instructions clearly and fairly express the law, a reviewing court should not reverse a judgment based upon an error in a portion of a charge. Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89,93; Margroff at 177.
In this case, the record demonstrates that no objection was raised to the trial court's phraseology and, as such, any claimed error is waived on appeal. See State v. Underwood (1983), 3 Ohio St.3d 12, 13. Nonetheless, a criminal defendant's failure to object would be reviewable if the error amounted to plain error under Crim.R. 52(B). State v. Long (1978), 53 Ohio St.2d 91. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus. In order to be reviewable by this court, however, appellant must show that the outcome of the trial would have been different if the claimed error had not occurred. Underwood, supra, at the syllabus. To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon (1995),102 Ohio App.3d 758, 767. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163, 166. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83; State v. Ospina (1992), 81 Ohio App.3d 644,647.
The trial court instructed the jury as follows:
 Knowledge. Presumption. Knowledge by the defendant a check would be dishonored is an essential element of the offense of passing bad checks. You may find the defendant knew the check would be dishonored if, after you have considered all the evidence, you find beyond a reasonable doubt that the check numbered 2124 was properly refused and payment [sic] for insufficient funds upon presentment within 30 days after issue or the date set forth in it, whichever was later, and the obligation was not paid within ten days after notice of dishonor was received by the defendant.
In this appeal, appellant contends that this language set forth by the trial court directly tracks the statutory language set forth in R.C.2913.11. However, a plain reading of the statute itself reveals that such is not the case.
R.C. 2913.11 states in pertinent part:
 (B) For purposes of this section, a person who issues or transfers a check or other negotiable instrument is presumed to know that it will be dishonored if either of the following occurs:
* * *
 (2) the check or other negotiable instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving notice of dishonor.
Thus, the instruction given by the trial court in this case is distinguishable from the instruction given in the case relied upon by appellant, State v. Adams (1982) 3 Ohio App.3d 50, which stated at paragraph three of the syllabus:
 The trial court must adequately instruct the jury on the nature and effect of the rebuttable presumption in a criminal case and the failure to do so is reversible error. (Sandstrom v. Montana, 442 U.S. 510, followed.)
In this case, a review of the record demonstrates that the
trial court did not instruct the jury as to the statutory presumption of knowledge that the check would be dishonored and, thus, the trial court was not required to include the additional instruction on the nature and effect of a rebuttable presumption.
Moreover, the evidence in the record supports the conclusion that appellant had actual knowledge of dishonored check no. 2124. The evidence demonstrated that appellant knew sufficient money was not in her account; she knew that Paul Vaccarina would cash the check; she knew that the check was dishonored for insufficient funds; and, yet, she failed to make good on her debt to Paul Vaccarina by either payment or satisfaction. Thus, it was unnecessary for the jury to presume knowledge where the evidence supports the conclusion that appellant had actual knowledge that the check was dishonored and she failed to make payment. As such, appellant cannot show that her conviction constitutes a manifest miscarriage of justice. Accordingly, no plain error occurred in the instruction of the jury by the trial court. Appellant's first assignment of error is without merit.
In her second assignment of error, appellant complains that her convictions were against the manifest weight of the evidence. Specifically, appellant asserts that the evidence overwhelmingly demonstrates that she did not intend to defraud or deceive Paul Vaccarina.
A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins (1997),78 Ohio St.3d 380, 386-387. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them." Id.
In determining whether a trial court's decision is against the manifest weight of the evidence, the following factors are guidelines to be taken into account by a reviewing court: (1) The reviewing court is not required to accept as true the incredible; (2) whether the evidence is uncontradicted; (3) whether a witness was impeached; (4) what was not proved; (5) the certainty of the evidence; (6) the reliability of the evidence; (7) whether a witness' testimony is self-serving; (8) whether the evidence is vague, uncertain, conflicting or fragmentary. See State v. Mattison (1985), 23 Ohio App.3d 10, 11; State v. Wilson, (June 9, 1994), Cuyahoga App. Nos. 64442 and 64443, unreported.
In making this determination, however, an appellate court must defer to the factfinder's conclusions regarding the witnesses' credibility as the factfinder is in a better position to observe the witnesses' demeanor. State v. DeHass (1969), 10 Ohio St.2d 230 . Moreover, the decision to reverse a judgment as against the manifest weight of the evidence is to be exercised with extreme caution and only in the exceptional case where it is evident that the evidence weighs manifestly against conviction. State v. Wilson, supra.
We find the state presented overwhelming and credible evidence to show defendant committed the acts in question. After a thorough review of the testimony adduced at trial, we are compelled to find that there was substantial evidence from which the trier of fact could reasonably conclude that appellant had knowledge that the check she wrote was dishonored and her liability was not discharged by payment or satisfaction and, further, that she knowingly deprived Paul Vaccarina of the value of his services in the amount of $1,066.83. Accordingly, appellant's second assignment of error is not well taken.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 TIMOTHY E. McMONAGLE JUDGE
DYKE, A.J. and PATTON, J., CONCUR.