CUYAHOGA FALLS (CITY), PLAINTIFF, v. MIKOLAJCZYK, DEFENDANT.

Cuyahoga Falls Municipal Court, Summit County.

No. A-22190. Decided September 27, 1962.

*Mr. Orval R. Hoover*, law director, and *Mr. Robert S. Moore*, assistant law director, for the city.
*Mr. William T. Creme*, for the defendant.

QUILLIN, J. The defendant is charged with operating a motor vehicle while under the influence of intoxicating liquor, contrary to and in violation of an ordinance of the City of

Cuyahoga Falls. A jury having been waived, the defendant was tried to the court. The evidence of the City consisted of the testimony of the arresting officer, the testimony of the desk sargeant, and the "test record" of a test administered with the use of a breathalizer machine. It is the weight, if any, to be given to the results of the breathalizer test around which the case revolves.

The defendant offered the testimony of his companion at the time of arrest and a lady with whom he conversed shortly before the arrest. The defendant also took the stand in his own behalf. All witnesses, prosecution and defense, agreed that the defendant was not *intoxicated*. The defendant's witnesses testified that he did not appear under the influence of intoxicating liquor, while the City's evidence was that he did appear to be under the influence. The defendant admitted to having three beers prior to his being arrested. He testified that these three beers were consumed over a period of two hours before being arrested. Without detailing the testimony of the various witnesses, suffice it to say that the state of the evidence without considering the results of the breathalizer machine is such that it falls short of the burden which the City must assume.

The City offered the desk sargeant, who testified without objection that the defendant consented to a breathalizer test and that the results of this test revealed a .15% of alcohol in the blood. No expert testimony was offered explaining the significance of such a blood alcohol content. The City argues that the court can and should take judicial notice of the effect on the defendant of a blood alcohol content of .15%. The defendant maintains that the unexplained reading can be given no weight by the court. There being no question as to the administering of the test nor the accuracy of the result, the issue is squarely presented as to the weight, if any, which a court may give to the uninterpreted test results.

About one-half of the states of the Union have enacted into law statutory presumptions concerning blood alcohol as it relates to being under the influence of intoxicants. Generally, they have provided that where there is .05% or less of alcohol in the blood, the presumption is that the subject is not under the influence; more than .05% but less than .15% gives rise to

no presumption whatever; and a .15% or more creates a rebuttable presumption that the subject was under the influence of intoxicants. The Uniform Vehicle Code, American Medical Association, and National Safety Council have adopted these standards, but neither the State of Ohio nor the City of Cuyahoga Falls have enacted such legislation.

In the usual case, the person who conducted the test testifies as to its manner of taking, and a second expert witness then interprets the results for the benefit of the trier of the facts (e. g. *Columbus* v. *VanMeter*, 56 Ohio Law Abs., 400). The presumptive statutes mentioned above have been enacted to eliminate the necessity of calling the expert witness to interpret the tests.

In the report of the Illinois Legislative Council (Springfield, August, 1956) entitled ''Legal Tests of Intoxication,'' at page 18, the following statement is made:

''In the absence of statute, in the situation we are now considering, it is not enough simply to present the test results for the deliberation of the trier of the facts. There must also be expert testimony, qualified in whatever manner is approved in the jurisdiction where the case is tried, to aid the trier of the facts in deciding the effects of the particular concentration of alcohol upon the individual he has before him. Probably the principal effect of the statutes is to eliminate the necessity of this expert testimony, in each case, and to substitute for it the finding of the legislature as expressed in the form of rebuttable presumptions.''

The courts are and should be reluctant to invade the province of the duly elected legislature. In *McKay* v. *State*, 155 Tex. Cr., 416, 235 S. W. (2d), 173, the court stated:

''We are not holding, in the instant case, that the foregoing (recommendation of the National Safety Council) is established as a scientific fact. The publication is a worthy one from an authority which must be respected and, in all probability, may win such recognition from the courts of some states. The legislature of Texas may pass such a law, if within its constitutional powers, but the courts of Texas have no legislative duties or powers.''

Likewise, in *Toms* v. *State* (Okla., 1952), 239 P. (2d), 812, the court states:

"Justice is truth in action, and any instrumentality, which aids justice in ascertainment of truth, should be embraced without delay. But, this decision is not ours to make. We have no legislative powers or duties, but the legislature within its legislative powers and Constitutional limitations may do so . . . :"

The City relies quite heavily on *State* v. *Titak* (1955), 75 Ohio Law Abs., 430, 144 N. W. (2d), 255, the eighth headnote of which states:

"8. In a prosecution for driving while under the influence of intoxicating liquor, a charge of the court as to the effect of concentration of alcohol in the blood generally was not erroneous where he specifically directed that it was for the jury to determine from the evidence, which included the intoxi-meter tests, as to whether the defendant was under the influence of intoxicating liquor."

This court, not being within the appellate jurisdiction of the *Titak* court, is bound by the decision only to the extent its logic is persuasive. On the other hand, we have the case of *Ohio* v. *Minnix* (1956), 101 Ohio App., 33, 157 N. W. (2d), 572, the fourth headnote of which states:

"4. In a prosecution on a charge of operating a motor vehicle while under the influence of intoxicating liquor, it is prejudicial error for the court, in instructing the jury on the use of an alcometer, to read 'the . . . (blood) standards as adopted by the National Safety Council,' where the evidence does not disclose the facts and figures referred to in such instruction."

In *Columbus* v. *Samuels* (1960), 112 Ohio App., 28, 174 N. E. (2d), 280, the headnote states:

"1. A urinalysis taken an hour and a half after an arrest and the opinion of the arresting officer that an accused 'was under the influence of alcohol' are insufficient as a matter of law to prove that such accused was operating an automobile while under the influence of alcohol at the time and place charged, where there is no evidence as to the scientific interpretation of the results of such urinalysis and such arresting officer did not see the accused operating such automobile."

Most persuasive of all, however, is the *dicta* in *Parton* v. *Weilman* (1959), 169 Ohio St., 145, 158 N. E. (2d), 719, wherein Judge Taft, speaking for the court, states:

"Certainly, without some definite expert testimony to explain the significance of the percentage of alcohol found in decedent's blood, the evidence as to that percentage does not tend to prove decedent was under the influence of alcohol. At the present time, the scientific foundation for such a test for sobriety is not so well established and known that a court can take judicial notice as to its significance. Therefore, a jury, without the guidance of expert testimony, should not be permitted to speculate as to its significance."

The Prosecutor argues with great logic that the meaning and significance of certain percentages of alcohol in the blood have now reached such a point of scientific acceptance that the court should accept them at face value. The court will not quarrel too violently with his position; however, the court also feels that the burden of changing existing concepts of criminal law should be placed upon the prosecution, which can absorb both the financial burden and the risk of error much better than an individual defendant.

THEREFORE, it is the opinion of the court that where the results of a test conducted to determine the percentage of alcohol in a defendant's bloodstream are not explained by a competent witness, such test results are of no probative value and should be disregarded by the trier of the facts.

The City having failed to establish the defendant's guilt beyond a reasonable doubt, the defendant is found not guilty and discharged from custody.