The STATE of Ohio

v.

WILSON.

2003-Ohio-3180.]

Marion County Municipal Court, Ohio.

No. 02 TRC 13184–1–2.

Decided May 28, 2003.

Todd A. Anderson, for defendant.

---

WILLIAM R. FINNEGAN, Judge.

{¶ 1} This day this case came on to be heard upon the motion in limine of the defendant seeking to exclude the results of a urine test that was positive for marijuana. The plaintiff has filed a memorandum in opposition to the defendant's motion.

{¶ 2} The defendant is not seeking to exclude the urine test result for drugs on the basis that the test was not administered in substantial compliance with the Rules of the Ohio Department of Health for the testing of drugs; rather, the defendant maintains that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. See Evid.R. 403(A). The prosecution, on the other hand, maintains that the drug test, administered in substantial compliance with the requirements of the Ohio Department of Health, is, by that fact alone, admissible. The state relies upon R.C. 4511.19(D)(1) which states:

"In any criminal prosecution * * * for a violation of this section, * * * relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse * * * the court may admit evidence on the concentration of alcohol, drugs of abuse, or alcohol and drugs of abuse in the defendant's blood, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the alleged violation * * *

"Such bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to section 3701.143 of the Revised Code."

{¶ 3} To resolve this issue, it is appropriate to review the history of the development of Ohio's DUI statute, R.C. 4511.19.

{¶ 4} Prior to 1968, R.C. 4511.19 was a simply worded statute, only 24 words long. The statute read as follows:

"No person who is under the influence of alcohol, narcotic drugs, or opiates, shall operate any vehicle, streetcar, or trackless trolley within this state."

{¶ 5} At that time, there were no statutory presumptions of alcohol impairment or *per se* prohibited concentrations of alcohol for operating a motor vehicle. There were, however, chemical tests to determine the level of alcohol in a person's system. In order to have the chemical tests received in evidence, it was necessary for the person who conducted the test to testify as to the manner of the

taking of the test, and then a second expert witness would then interpret the test results for the benefit of the trier of fact, to demonstrate that the test results indicated that the person was under the influence of alcohol. *Cuyahoga Falls v. Mikolajczyk*, (M.C.1962), 90 Ohio Law Abs. 28, 26 O.O.2d 33, 187 N.E.2d 197. Where the results of a test conducted to determine the percentage of alcohol in a defendant's bloodstream were not explained by a competent witness, such tests results were of no probative value and should have been disregarded by the trier of facts. *Cuyahoga Falls v. Mikolajczyk*, supra.

{¶ 6} In 1968, R.C. 4511.19 was substantially amended and created for the first time a statutory presumption of being under the influence of alcohol. As part of this legislation, and in recognition of the greater importance placed upon chemical tests for the level of alcohol, the Ohio Legislature imposed requirements that the chemical tests be administered within two hours of the time of operation of the vehicle, and that the chemical test for alcohol be analyzed in accordance with methods approved by the Ohio Department of Health by an individual possessing a valid permit issued pursuant to R.C. 3701.143. R.C. 3701.143 was also enacted as part of the same legislation, authorizing the Ohio Department of Health to determine techniques or methods for chemically analyzing a person's blood, urine, or breath, in order to ascertain the amount of alcohol in a person's system. The 1968 legislation did not have any provisions for the promulgation of standards for the testing of drugs, nor did it have any presumed levels of being under the influence of drugs.

{¶ 7} In *State v. Myers* (1971), 26 Ohio St.2d 190, 55 O.O.2d 447, 271 N.E.2d 245, the Ohio Supreme Court stated that when R.C. 4511.19 was amended to provide for a presumed level of intoxication,

"the General Assembly has expressed its conviction that the relationship between the objective determination by chemical test of the percentage of alcohol by weight in the blood (.15% or more), and its effect on people, is so well scientifically established that it need not be demonstrated by evidence, and may take the place of evidence at trial. *The purpose of the presumption is to eliminate the need for expert testimony which would otherwise be necessary to relate the numerical figure representing a percentage of alcohol by weight in the blood as shown by the result of a chemical test, with the common understanding of being under the influence of alcohol.*" (Emphasis added.) *State v. Myers*, supra, at 198, 55 O.O.2d 447, 271 N.E.2d 245.

{¶ 8} The Ohio Supreme Court, in *Cincinnati v. Sand* (1975), 43 Ohio St.2d 79, 72 O.O.2d 44, 330 N.E.2d 908, syllabus, held that the results of a breathalizer test, administered pursuant to R.C. 4511.19, may only be admitted in evidence upon the affirmative establishment of facts supporting the following conditions:

"(a) The bodily substance must be withdrawn within two hours of the time of such alleged violation.

"(b) Such bodily substance shall be analyzed in accordance with methods approved by the Director of Health.

"(c) The analyses shall be conducted by qualified individuals holding permits issued by the Director of Health pursuant to R.C. 3701.143."

{¶ 9} *Cincinnati v. Sand* involved a person under the influence of alcohol, not a person under the influence of a drug of abuse.

{¶ 10} After 1968, R.C. 4511.19 was amended a number of times. In 1987, R.C. 4511.19 was amended such that chemical tests for drugs of abuse were now also to be done within two hours of the time of operation of the vehicle and also required that chemical tests for drugs of abuse be analyzed in accordance with methods approved by the Ohio Department of Health by an individual possessing a valid permit issued by the Director of the Department of Health pursuant to R.C. 3701.143. It is not clear why the Ohio legislature made that amendment, although it appears that the statute was amended merely to make the language of R.C. 4511.19 consistent in regard to charges of driving under the influence of alcohol and driving under the influence of drugs. By 1987, the reason for the different treatment of chemical tests for alcohol, as opposed to drugs of abuse, was apparently forgotten. This court makes this conclusion on the basis that the Ohio legislature failed to include in R.C. 4511.19 any provision relating to a presumed level of being under the influence of drugs of abuse and the fact that although R.C. 4511.19 now required drug tests to be analyzed by persons possessing permits issued by the Ohio Department of Health pursuant to R.C. 3701.143, R.C. 3701.143 itself was not amended, and the Ohio Department of Health was still only authorized to determine methods for chemical analysis to ascertain the amount of alcohol, and to grant permits for individuals to conduct such analysis for alcohol, but not for drugs of abuse.

{¶ 11} The net effect of the 1987 amendment to R.C. 4511.19 was to create an additional step for the prosecution in a DUI case to have chemical test results for drugs of abuse admitted.

{¶ 12} Since the Ohio Department of Health was not given authority to determine techniques or methods for chemically analyzing drugs of abuse by R.C. 3701.143, it did not, of course, make any such determinations. This made it impossible for chemical tests for drugs of abuse to be admitted in a DUI trial because in *State v. Ripple* (1994), 70 Ohio St.3d 86, 637 N.E.2d 304, the court held that absent approval of methods by the Director of Health pertaining to the testing of bodily substances of drugs, a chemical analysis purporting to indicate the presence of drugs in an accused was inadmissible in a prosecution brought pursuant to R.C. 4511.19.

{¶ 13} While *Ripple* was making its way through the Ohio court system, the Ohio legislature, in 1993, finally amended R.C. 3701.143 to permit the Ohio Department of Health to determine techniques for chemically analyzing a person's blood, urine, breath, or other bodily substance, not only to ascertain the amount of alcohol, but also the amount of drugs of abuse. However, the Ohio Department of Health did not exercise this new authority until 1997, when the standards for the taking and analysis of chemical tests to determine the presence and amount of drugs of abuse were put in effect. These regulations are found in Ohio Adm.Code 3701–53–03(B).

{¶ 14} With the Ohio Department of Health now providing standards for taking and analyzing chemical tests to determine the presence and amount of drugs of abuse, the obstacle to the admission of chemical tests for drugs of abuse in *State v. Ripple* was removed. However, the issue remains as to whether substantial compliance with the rules is alone sufficient to permit the admission of the drug test results at trial, as advocated by the prosecution, or whether expert testimony is also required to relate the results of the drug test to the defendant's operation of the vehicle at the time of the alleged violation, as advocated by the defendant.

{¶ 15} The court finds that since the Ohio legislature has never promulgated standards where either a person is presumed to be under the influence of drugs or a per se prohibited level of concentration of drugs of abuse while operating a vehicle, the admission of a drug test analysis still faces the same requirements as chemical tests for alcohol faced in a DUI prosecution prior to 1968, namely, that where the results of a test conducted to determine the amount of drugs of abuse in a defendant's system are not explained by a competent witness, such test results are of no probative value and should be disregarded by the trier of facts. *Cuyahoga Falls v. Mikolajczyk*, supra.

{¶ 16} In a case that dealt with Ohio law relating to alcohol tests prior to the 1968 amendment of R.C. 4511.19, it was stated:

"Certainly, without some definite expert testimony to explain the significance of the percentage of alcohol found in decedent's blood, the evidence as to that percentage does not tend to prove decedent was under the influence of alcohol. At the present time, the scientific foundation for such a test for sobriety is not so well established and known that a court can take judicial notice as to its significance. Therefore, a jury, without the guidance of expert testimony, should not be permitted to speculate as to its significance." *Parton v. Weilnau* (1959), 169 Ohio St. 145, 151, 8 O.O.2d 134, 158 N.E.2d 719.

{¶ 17} This language, although related to alcohol tests, is even more applicable to tests of drugs of abuse because the general public has far less exposure or knowledge as to the effects of various drugs of abuse and how the particular drug operates to appreciably impair a person's actions, reactions, or mental processes.

{¶ 18} The court further notes that in *Newark v. Lucas* (1988), 40 Ohio St.3d 100, 532 N.E.2d 130, a case involving driving under the influence of alcohol, the Ohio Supreme Court held that the results of a properly administered bodily substance test, presented with expert testimony, may be admitted into evidence despite the fact that the bodily substance was taken more than two hours from the time of the alleged violation of R.C. 4511.19(A)(1).

{¶ 19} The Ohio Supreme Court indicated that the properly administered test would be admissible but that it would be necessary to relate the test results to the defendant and to the time of the alleged violation, as well as to relate the numerical figure represented by a percentage of alcohol by weight in the bodily substance, as shown by the results of the chemical test, to the common understanding of what it is to be under the influence of alcohol. Although *Newark v. Lucas* dealt with a chemical test for alcohol, the reasoning is equally applicable to tests for drugs of abuse, given that there is neither a statutory presumption nor per se prohibited level for concentration of drugs of abuse in R.C. 4511.19.

{¶ 20} The court also notes that the prosecuting attorney in *State v. Ripple* was intending to use expert testimony in conjunction with the drug-test results, had the Ohio Supreme Court ruled in the state's favor to allow the drug-test results into evidence.

{¶ 21} The court finds that the results of the urine test of the defendant may be admissible at trial if the state is able to relate the test results to the defendant and to the time of the alleged violation, as well as to relate the numerical figure representing the concentration of marijuana, as shown by the results of the chemical test, to the common understanding of what it is to be under the influence of marijuana. The defendant would have the opportunity to challenge the accuracy of the specific test results. *Newark v. Lucas*, supra.

{¶ 22} This case shall proceed to jury trial.